```
UNITED STATES DISTRICT COURT                    (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
MICHAEL SCHILLER, et al.,              : 04 Civ. 7922 (RJS) (JCF)
                                       :
              Plaintiffs,              :
                                       :
     - against -                       :
                                       :
THE CITY OF NEW YORK, et al.,          :
                                       :
              Defendants.              :
- - - - - - - - - - - - - - - - - - - -:
HACER DINLER, et al.,                  : 04 Civ. 7921 (RJS) (JCF)
                                       :
              Plaintiffs,              :
                                       :
     - against -                       :
                                       :
THE CITY OF NEW YORK, et al.,          :
                                       :
              Defendants.              :
- - - - - - - - - - - - - - - - - - - -:
DEIRDRE MACNAMARA, et al.,             : 04 Civ. 9216 (RJS) (JCF)
individually, and on behalf of a       :
class of all others similarly          :
situated,                              :
                                       :
              Plaintiffs,              :
                                       :
     - against -                       :
                                       :
THE CITY OF NEW YORK, et al.,          :
                                       :
              Defendants.              :
- - - - - - - - - - - - - - - - - - - -:
NOEL GROSSO, a/k/a NOELLE GROSSO,      : 05 Civ. 5080 (RJS) (JCF)
                                       :
              Plaintiff,               :
                                       :
     - against -                       :
                                       :
THE CITY OF NEW YORK, et al.,          :
                                       :
              Defendants.              :
- - - - - - - - - - - - - - - - - - - -:
BRIAN PORTERA,                         : 05 Civ. 9985 (RJS) (JCF)
                                       :
              Plaintiff,               :
                                       :
     - against -                       :
                                       :
THE CITY OF NEW YORK, et al.,          :
                                       :
              Defendants.              :
- - - - - - - - - - - - - - - - - - - -:
```

```
JESSICA RECHTSCHAFFER,             :  05 Civ. 9930 (RJS) (JCF)
                                   :
              Plaintiff,           :
                                   :
     - against -                   :
                                   :
THE CITY OF NEW YORK, et al.,      :
                                   :
              Defendants.          :
- - - - - - - - - - - - - - - - - :
SARAH COBURN, et al.,              :  05 Civ. 7623 (RJS) (JCF)
JEFFREY PHILLIPS, et al.,          :  05 Civ. 7624 (RJS) (JCF)
EMILY SLOAN, et al.,               :  05 Civ. 7668 (RJS) (JCF)
GWYNN GALITZER,                    :  05 Civ. 7669 (RJS) (JCF)
BETTY BASTIDAS, et al.,            :  05 Civ. 7670 (RJS) (JCF)
RANDY XU, et al.,                  :  05 Civ. 7672 (RJS) (JCF)
NIKOLAS SIKELIANOS,                :  05 Civ. 7673 (RJS) (JCF)
UDO DRESCHER,                      :  05 Civ. 7541 (RJS) (JCF)
                                   :
              Plaintiffs,          :
                                   :
     - against -                   :
                                   :
THE CITY OF NEW YORK, et al.,      :
                                   :
              Defendants.          :
- - - - - - - - - - - - - - - - - :
TARASIK ABDELL, et al.,            :  05 Civ. 8453 (RJS) (JCF)
COURTNEY LEE ADAMS, et al.,        :  05 Civ. 9484 (RJS) (JCF)
BARBARA ARANEDA, et al.,           :  05 Civ. 9738 (RJS) (JCF)
COREY EASTWOOD, et al.,            :  05 Civ. 9483 (RJS) (JCF)
                                   :
              Plaintiffs,          :
                                   :
     - against -                   :
                                   :
THE CITY OF NEW YORK, et al.,      :
                                   :
              Defendants.          :
- - - - - - - - - - - - - - - - - :
CAROL DUDEK,                       :  04 Civ. 10178 (RJS) (JCF)
CATHIE L. BELL,                    :  05 Civ. 3705  (RJS) (JCF)
ELIZABETH STARIN,                  :  05 Civ. 5152  (RJS) (JCF)
JEANETTE LAHN-SHEEN LEE,           :  05 Civ. 5528  (RJS) (JCF)
JULIA R. COHEN,                    :  05 Civ. 6780  (RJS) (JCF)
                                   :
              Plaintiffs,          :
                                   :
     - against -                   :
                                   :
THE CITY OF NEW YORK, et al.,      :
                                   :
              Defendants.          :
- - - - - - - - - - - - - - - - - :
```

```
SHARONE BUNIM, et al.,            :  05 Civ. 1562 (RJS) (JCF)
RITU KALRA, et al.,               :  05 Civ. 1563 (RJS) (JCF)
LINDSAY RYAN, et al.,             :  05 Civ. 1564 (RJS) (JCF)
ADRIENNE GARBINI, et al.,         :  05 Civ. 1565 (RJS) (JCF)
ADAM GREENWALD, et al.,           :  05 Civ. 1566 (RJS) (JCF)
BRIAN PICKETT, et al.,            :  05 Civ. 1567 (RJS) (JCF)
WENDY TREMAYNE, et al.,           :  05 Civ. 1568 (RJS) (JCF)
JEREMY BIDDLE, et al.,            :  05 Civ. 1570 (RJS) (JCF)
MATTHEW MORAN, et al.,            :  05 Civ. 1571 (RJS) (JCF)
SACHA BOTBOL, et al.,             :  05 Civ. 1572 (RJS) (JCF)
EMILY CROTTY, et al.,             :  05 Civ. 7577 (RJS) (JCF)
JEFFREY STARK, et al.,            :  05 Civ. 7579 (RJS) (JCF)
KATHLEEN LALIER, et al.,          :  05 Civ. 7580 (RJS) (JCF)
                                  :
              Plaintiffs,         :
                                  :
       - against -                :
                                  :
THE CITY OF NEW YORK, et al.,     :
                                  :
              Defendants.         :
- - - - - - - - - - - - - - - - - :
KAITLYN TIKKUN,                   :  05 Civ. 9901 (RJS) (JCF)
                                  :
              Plaintiff,          :
                                  :
       - against -                :
                                  :               MEMORANDUM
THE CITY OF NEW YORK, et al.,     :               AND  ORDER
                                  :
              Defendants.         :
- - - - - - - - - - - - - - - - - :
```

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

These cases involve claims of civil rights violations arising out of arrests that took place during the Republican National Convention (the "RNC") in New York City in August and September 2004. The plaintiffs in the 37 captioned cases have moved pursuant to Rule 15(a) of the Federal Rules of Civil Procedure to amend their complaints to: (1) add numerous defendants and assert claims for individual supervisory liability; (2) challenge on constitutional and state law grounds the City's alleged policy of detaining and fingerprinting all persons arrested in conjunction with the RNC; (3) assert constitutional challenges to the City's

1

alleged policy of creating false sworn statements supporting the arrests; (4) raise constitutional challenges to New York's parading ordinance and disorderly conduct statute; and (5) make other changes as set forth in the proposed amended complaints. The defendants oppose the motions in part. For the reasons that follow, the plaintiffs' motions are granted in part and denied in part.

<u>Background</u>

The original complaints in these cases were filed in 2004 and 2005. Some of them have been amended before; thus, the proposed amended complaints in the pending motions may be first, second, third, or fourth amended complaints. In August 2007, as the three-year statute of limitations for Section 1983 claims approached, various plaintiffs' counsel forwarded proposed amended complaints to counsel for the City and individual named defendants (collectively, the "City"). In the vast majority of these cases, the City did not respond. The plaintiffs therefore filed the pending motions to amend at the end of August 2007. The motions, accompanying declarations, and proposed amended complaints were filed in batches by plaintiffs' counsel. Where the plaintiffs share the same counsel, the proposed amended complaints generally track the same format such that a single proposed amended complaint may be analyzed as a template for the proposed changes in other complaints. The City opted to state its objections to the plaintiffs' motions in a single opposition memorandum filed on October 23, 2007. Plaintiffs' counsel then filed replies, many of them relying on arguments set forth in the reply memorandum

submitted by counsel in <u>MacNamara</u> and <u>Abdell</u>.  (Reply Memorandum of Law in Support of Motion for Leave to File a Second Amended Class Action Complaint ("<u>MacNamara</u> and <u>Abdell</u> Reply")).

<u>Discussion</u>

    A.   <u>Standard for Amendment</u>

    A motion to amend is generally governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a); <u>see also</u> <u>Oneida Indian Nation of New York v. City of Sherill</u>, 337 F.3d 139, 168 (2d Cir. 2003), <u>rev'd on other grounds</u>, 544 U.S. 197 (2005).  Notwithstanding the liberality of the rule, "it is within the sound discretion of the court whether to grant leave to amend." <u>John Hancock Mutual Life Insurance Co. v. Amerford International Corp.</u>, 22 F.3d 458, 462 (2d Cir. 1994); <u>accord</u> <u>Krumme v. WestPoint Stevens Inc.</u>, 143 F.3d 71, 88 (2d Cir. 1998). Regarding the use of this discretion, the Supreme Court has stated:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave should . . . be freely given.

<u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (internal quotation marks omitted).

    B.   <u>Uncontested Changes</u>

    The City does not oppose the addition of factual allegations and constitutional challenges to the defendants' alleged practice

of detaining[1] and fingerprinting[2] all persons arrested in
conjunction with the RNC. As these are the only proposed changes
in <u>Schiller</u> and <u>Dinler</u>, the City consents to the plaintiffs'
motions in their entirety in those cases. The City also does not
oppose the addition of requests for injunctive relief in the form
of expungement or destruction of records, database entries, and
fingerprints created incident to the plaintiffs' arrests. (E.g.,
<u>MacNamara</u> Second Amended Complaint at 98-99). Third, the City does
not oppose the addition of a constitutional challenge to the
alleged practice of the New York City Police Department (the
"NYPD") of creating false sworn statements by police officers to
justify arrests. (Memorandum of Law in Support of Motion for Leave
to File Second Amended Class Action Complaint in <u>MacNamara</u>
("<u>MacNamara</u> Memo.") at 6). And, fourth, the City does not oppose
proposed amendments in nine cases to add a constitutional claim for
the failure to intervene to prevent harm caused by other police

---

[1] The plaintiffs allege that the practice of detaining all
arrestees, no matter how minor the infraction, rather than issuing
summonses on the street (the "no-summons policy"), was intended to
prevent people from participating in further protest activity.
(E.g., <u>MacNamara</u> Second Amended Complaint, attached as Exh. A to
Declaration of Clare Norins in Support of Plaintiffs' Motion for
Leave to File Second Amended Class Action Complaint in <u>MacNamara</u>
dated Aug. 27, 2007 ("Norins 8/27/07 Decl."), ¶ 90).

[2] Various plaintiffs have sought leave to add a constitutional
challenge based specifically on violations of Section 160.10 of the
New York Criminal Procedure Law (the "CPL"), which sets forth the
conditions under which the police may fingerprint an individual.
The City does not oppose these amendments, but reserves its right
to argue on a motion for summary judgment that violations of
Section 160.10 do not give rise to a cognizable cause of action.
(Defendants' Memorandum of Law in Partial Opposition to Plaintiffs'
Motions to File Amended Complaints ("Def. Opp. Memo.") at 22
n.22).

officers.[3]

With the exception of Deputy Commissioner David Cohen, the City does not oppose the plaintiffs' proposal to add numerous other individual defendants to the complaints.   These include Jack McManus, the Assistant Chief of the NYPD, various members of the NYPD Legal Bureau alleged to be responsible for the systematic creation of perjured sworn statements, and supervisory and arresting officers at the relevant arrest sites.  The majority of these individuals are already named in other RNC cases, and they appear to have all been deposed already or scheduled for deposition, minimizing any hardship or prejudice that might result from their joinder at this late stage in discovery.  Cf. Silkroad Associates, Ltd. v. Junior Gallery Group, Inc., No. 88 Civ. 7082, 1991 WL 51103, at *1 (S.D.N.Y. April 1, 1991) (denying motion to amend at close of discovery where substantial additional discovery in connection with new defendants would be required and prejudice would be manifest).  Although the plaintiffs acknowledge that some of these defendants could have been added earlier as information about them became available, they say that they waited to add them all at once "at the close of the [three-year] statute of limitations [period for Section 1983 claims]" to avoid burdening the Court with "multiple, incremental motions to amend." (MacNamara Memo. at 4-5).  The plaintiffs represent that they do

---

[3] These cases are Bunim, Kalra, Ryan, Garbini, Greenwald, Pickett, Tremayne, Biddle, Moran, Botbol, Crotty, Stark, Lalier, and Tikkun.

not seek to assert state law claims against the new defendants.[4]
(Letter of James I. Meyerson dated Aug. 24, 2007 in <u>Dudek</u>, <u>Bell</u>,
<u>Starin</u>, <u>Lee</u>, and <u>Cohen</u> ("<u>Dudek</u> Letter") at 4; Reply Memorandum of
Law in Support of Plaintiffs' Motion for an Order Permitting
Plaintiffs to Amend the Pleadings in <u>Coburn</u>, <u>Phllips</u>, <u>Sloan</u>,
<u>Galitzer</u>, <u>Bastidas</u>, <u>Xu</u>, <u>Sikelianos</u>, and <u>Drescher</u> ("<u>Coburn</u> Reply")
at 2 ("Plaintiffs do not seek at this time to assert state law
claims against any of the new defendants.")).

Further, the City does not oppose amendments to add claims for
individual supervisory liability, including demands for punitive
damages, for any misconduct that does not implicate municipal
liability under <u>Monell v. Department of Social Services</u>, 436 U.S.
658 (1978). <u>See</u> <u>Guitierrez-Rodriquez v. Cartagena</u>, 882 F.2d 553,
567 (1st Cir. 1989) ("[I]nquiry into whether there has been a
pattern of past abuses or official condonation thereof is only
required when a plaintiff has sued a municipality . . . . Where the
plaintiff has brought suit against the defendant as
individuals . .. [he] need only establish that the defendants' acts
or omissions . . . caused his constitutional deprivations.").

Finally, the City does not oppose various other non-
substantive amendments to make formatting and stylistic
improvements, update contact information, conform class

---

[4] Given the potential for confusion, the plaintiffs would be
well served by clarifying this in their amended complaints, as some
of the plaintiffs' counsel have volunteered to do.  (Letter of
Jonathan C. Moore and Rachel M. Kleinman dated Nov. 12, 2007 in
<u>Portera</u> and <u>Rechtschaffer</u>).  For example, the format that has been
adopted by the <u>Bunim</u> plaintiffs is instructive.  That complaint
identifies the individual defendants against which state law claims
are asserted at the beginning of the section(s) where the state law
claims are set forth.  (<u>Bunim</u> Fourth Amended Complaint, ¶¶ 121-90).

allegations, and the like.

        C.    Adding Commissioner Cohen as a Defendant

        The plaintiffs in 27 cases seek leave to amend to add David
Cohen, the Deputy Commissioner of Intelligence for the NYPD, as a
defendant.[5]   They seek to assert claims against him in his
individual capacity and to include him as a Monell defendant for
purposes of asserting municipal liability.  The City opposes the
addition of Commissioner Cohen to these complaints on the grounds
that amendment would be futile.

        Motions to amend are governed generally by Rule 15(a);
however, if the proposed amendment adds new parties, then Rule 21
controls.  Momentum Luggage & Leisure Bags v. Jansport, Inc., No.
00 Civ. 7909, 2001 WL 58000, at *1 (S.D.N.Y. Jan. 23, 2001).   Rule
21 states that a party may be added to an action "at any time, on
just terms."  Fed. R. Civ. P. 21.  In deciding whether to permit
joinder, courts apply the "same standard of liberality afforded to
motions to amend pleadings under Rule 15."  Soler v. G & U, Inc.,
86  F.R.D.  524,  528  (S.D.N.Y.  1980)  (quoting  Fair  Housing
Development Fund Corp. v. Burke, 55 F.R.D. 414, 419 (E.D.N.Y.
1972); accord Smith v. P.O. Canine Dog Chas, No. 02 Civ. 6240, 2004
WL 2202564, at *12 n.11 (S.D.N.Y. Sept. 28, 2004); Momentum
Luggage, 2001 WL 58000, at *2; Clarke v. Fonix Corp., No. 98 Civ.
6116, 1999 WL 105031, at *6 (S.D.N.Y. March 1, 1999)).   Thus,
joinder will be permitted absent undue delay, bad faith, prejudice,

_____

        [5] The cases are MacNamara, Grosso, Coburn, Phillips, Sloan,
Galitzer,  Bastidas,  Xu,  Sikelianos,  Drescher,  Abdell,  Adams,
Araneda, Eastwood, Bunim, Kalra, Ryan, Garbini, Greenwald, Pickett,
Tremayne,  Biddle,  Moran,  Botbol,  Crotty,  Stark,  and  Lalier.

or futility.  Permission to amend may be denied as futile if the
amendment would not withstand a motion to dismiss pursuant to Rule
12(b)(6).  See Oneida Indian Nation, 337 F.3d at 168; Smith v. CPC
International, Inc., 104 F. Supp. 2d 272, 274 (S.D.N.Y. 2000).  To
survive a 12(b)(6) motion, a complaint "does not need detailed
factual allegations"; however, it "requires more than labels and
conclusions, and a formulaic recitation of the elements of a cause
of action will not do."  Bell Atlantic Corp. v. Twombly, __ U.S.
__, __, 127 S. Ct. 1955, 1964-65 (2007).

In the period leading up to the RNC, Commissioner Cohen
supervised the NYPD's gathering of intelligence regarding expected
demonstration activity and potential security risks.  (Declaration
of David Cohen dated May 2, 2007 ("Cohen 5/2/07 Decl."), attached
as Exh. C to Norins 8/27/07 Decl., ¶ 6).  In addition, he analyzed
the information and presented it to NYPD Commissioner Raymond Kelly
and other decision makers (Cohen 5/2/07 Decl., ¶ 9-11), who
presumably relied on it in formulating the policing policies and
practices that are the subject of this litigation.  (MacNamara and
Abdell Reply at 2; Memorandum of Law in Support of Motions for
Leave to File Amended Complaints in Abdell, Adams, Araneda, and
Eastwood ("Abdell Memo.") at 7).

Section 1983 imposes liability on a defendant for conduct
which "subjects, or causes to be subjected, the [plaintiff] to
deprivation of a right secured by the Constitution [or federal]
law[]."  Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986)
(quoting Rizzo v. Goode, 423 U.S. 362, 370-71 (1976)).  In order to
obtain an award of damages against a defendant for a constitutional

violation, the plaintiff must show that the individual was personally involved in the violation. Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).  Personal involvement may be premised on a showing that: (1) the official participated directly in the violation; (2) the official, after learning of the violation through a report or appeal, failed to remedy the wrong; (3) the official created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the official was grossly negligent in supervising subordinates who caused the unlawful condition or event; or (5) the official exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring. Back v. Hastings on Hudson Union Free School District, 365 F.3d 107, 127 (2d Cir. 2004) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)); Washington v. Kelly, 03 Civ. 4638, 2004 WL 830084, at *3 (S.D.N.Y. April 13, 2004).

The plaintiffs assert that Commissioner Cohen was personally involved in this case because of his "supervision of the Intelligence Division's gathering of data" and his "formulation" of policy through the presentation of distorted intelligence data that "culminated in the formulation and adoption of the no-summons and blanket fingerprinting policies." (MacNamara and Abdell Reply at 3-4).  With respect to the first grounds, however, the plaintiffs have not alleged that the gathering of data itself caused a violation of the plaintiffs' rights.  They simply identify Commissioner Cohen as a supervisor who "failed to properly train,

9

supervise or discipline employees." (MacNamara Second Amended
Complaint, ¶ 254). In the absence of any allegation of wrongdoing
by the employees in the Intelligence Division that has
constitutional implications, this conclusory assertion is not
sufficient to establish that Commissioner Cohen failed to remedy a
wrong committed by those under his supervision or that he was
otherwise negligent in supervising them. Thus, the plaintiffs'
motions to amend are denied to the extent that they purport to
assert claims against Commissioner Cohen for failure to supervise
his subordinates properly.

With respect to the second ground, the plaintiffs are on
stronger footing. The City points out, and the plaintiffs do not
dispute, that Commissioner Cohen did not have final decisionmaking
authority with respect to the relevant RNC policing procedures.
(Def. Opp. Memo. at 10-11). Nor has there been an allegation that
he lobbied those with final decisionmaking authority to adopt the
challenged procedures as a response to the information he
presented. The presentation of an opinion or the results of an
investigation, even if it served as justification for another
official's decision to act unconstitutionally, would not on its own
subject the official who forwarded the information to individual
liability. See Mitchell v. Victoria Home, 434 F. Supp. 2d 219, 228
(S.D.N.Y. 2006) (dismissing claim against special investigator
whose report led to the initiation of criminal proceedings against
plaintiff); Hannon v. Terra, Civ. A. No. 94-2845, 1995 WL 129219,
*10 (E.D. Pa. March 24, 1995) ("While [defendants] may have played
a role in providing information that ultimately led to the

10

[challenged action], it is crediting the defendants with more power than they have to say they were responsible for [the challenged action].").  In this case, however, the plaintiffs have averred that Commissioner Cohen manipulated the information he presented to the relevant decisionmakers.  (MacNamara and Abdell Reply at 3) ("Cohen grossly misinformed the RNC Executive Committee . . . of the security threat posed by the people and groups who were planning to protest during the RNC.").  If this is true, Commissioner Cohen's conduct would render him more akin to an officer who creates a false report in a false arrest or malicious prosecution case than an investigator who simply "went about his job".  Mitchell, 434 F. Supp. 2d at 228.  Courts have found liability where an officer "withholds relevant and material information or creates false information likely to influence a jury's decision and forwards that information to prosecutors." Caraballo v. City of New York, No. 05 Civ. 8011, 2007 WL 1584202, at *7 (S.D.N.Y. May 31, 2007) (quoting Mitchell, 434 F. Supp. 2d at 227); Ricciuti v. New York City Transit Authority, 124 F.3d 123, 130 (2d Cir. 1997) (no qualified immunity where officer "creates false information likely to influence a jury's decision"). Although the officer does not initiate the prosecution himself, courts have reasoned that the proffering of false information overcomes the presumption that the official acting on that information exercises independent judgment, such that the defendant can be said to have "played an active role."  Mitchell, 434 F. Supp. 2d at 227; see also Brome v. City of New York, No. 02 Civ. 7184, 2004 WL 502645, at *5 (S.D.N.Y. March 15, 2004).

Commissioner Cohen's alleged conduct is further distinguished from the investigator in Mitchell in that he holds a high rank in the NYPD and was therefore in a position to understand and influence policymaking for the RNC.  The plaintiffs are more likely to be able to show that he knew, or should have known, that the threats identified by his briefings would lead to particular policy outcomes.[6]

The City argues that the record does not support a claim that Commissioner Cohen misrepresented the security threat to Commissioner Kelly and others.  But discovery has not closed and the plaintiffs are not required to prove the truth of their claims at this stage.  The record indicates that Commissioner Cohen initiated the RNC surveillance program.  (Deposition of David Cohen dated March 28, 2007 ("Cohen Dep."), excerpts attached as Exh. B of Declaration of Raju Sandaran dated Oct. 23, 2007, at 56).  The plaintiffs have also pointed to a Wall Street Journal interview with Commissioner Cohen in which he discusses the role of the intelligence he provided in justifying the no-summons and fingerprinting policies.  (MacNamara and Abdell Reply at 3; Judith Miller, When Activists Are Terrorists, Wall St. J., May 3, 2007, at A17, attached as Exh. A. to Declaration of Clare Norins in Further

---

[6]   Only some of the plaintiffs' proposed amended complaints contain specific allegations regarding Commissioner Cohen's misrepresentation of intelligence data.  In light of the potential significance of any such misrepresentation to a finding of liability, I will condition the plaintiffs' amendment on the inclusion of allegations to this effect.  The plaintiffs have indicated that they are amenable to describing their theory of liability in more detail.  (MacNamara and Abdell Reply at 3 n.5; Letter of Rose M. Weber dated Nov. 16, 2007 ("Bunim Reply") at 2 n.1).

Support of Plaintiffs' Motion for Leave to File Second Amended
Class Action Complaint in <u>MacNamara</u> dated Nov. 15, 2007 ). Whether
or not this would be enough to survive summary judgment, it is
adequate to "raise a right to relief above the speculative level."
<u>Twombly</u>, __ U.S. at __, 127 S. Ct. at 1965.[7]

    D.   <u>New Causes of Action</u>

       1.   <u>Administrative Code Section 10-110</u>

     The plaintiffs in 19 cases[8] seek leave to add constitutional
claims challenging Section 10-110 of the New York City
Administrative Code, the municipal law that prohibits parading
without a permit.[9]  The plaintiffs seek to challenge the ordinance

---

    [7] Likewise, the question of whether Commissioner Cohen is a
"final policymaker" for <u>Monell</u> purposes is a question of state law
that involves a fact-specific inquiry.  <u>See</u> <u>Sonds v. St. Barnabas</u>
<u>Hospital Correctional Health Services</u>, 151 F. Supp. 2d 303, 309
(S.D.N.Y. 2001) (citing <u>Gordon v. County of Rockland</u>, 110 F.3d 886,
888-89 (2d Cir. 1997)).  It does not lend itself to resolution on
a motion to dismiss, and thus I decline to reach it here.

    [8] The cases are <u>MacNamara</u>, <u>Coburn</u>, <u>Phillips</u>, <u>Sloan</u>, <u>Galitzer</u>,
<u>Bastidas</u>, <u>Xu</u>, <u>Sikelianos</u>, <u>Drescher</u>, <u>Abdell</u>, <u>Adams</u>, <u>Araneda</u>,
<u>Eastwood</u>, <u>Dudek</u>, <u>Bell</u>, <u>Starin</u>, <u>Lee</u>, <u>Cohen</u>, and <u>Tikkun</u>.  The
plaintiffs in <u>Coburn</u>, <u>Phillips</u>, <u>Sloan</u>, <u>Galitzer</u>, <u>Bastidas</u>, <u>Xu</u>,
<u>Sikelianos</u>, and <u>Drescher</u> appear to have previously asserted
constitutional challenges to the City's parading ordinance, but now
seek leave to specify the ordinance by name.  (E.g., Red-Lined
<u>Phillips</u> First Amended Complaint, attached as Exh. A to Declaration
of Jeffrey Rothman in Support of Plaintiffs' Motion for Leave to
File Amended Complaints in <u>Phillips</u>, <u>Coburn</u>, and <u>Drescher</u> dated
Aug. 29, 2007, ¶ 88).

    [9] The relevant text provides that:

A procession, parade, or race shall be permitted upon any
street or in any public place only after a written permit
therefor has been obtained from the police commissioner.
Application for such permit shall be made . . . and
furnished by the department [] not less than thirty-six
hours previous to the forming or marching of such
procession, parade or race. . . . Every person
participating in any procession, parade or race, for
which a permit has not been issued when required by this

both on its face and as applied during the RNC. The City opposes these amendments as futile, unreasonably delayed, and prejudicial.

The plaintiffs' facial attack on Section 10-110 generally alleges that the ordinance is both vague and overbroad. The MacNamara plaintiffs assert that Section 10-110 "improperly applies strict liability" and fails to "define the terms 'procession, parade, or race.'" (MacNamara Second Amended Complaint, ¶¶ 240, 242). The City first argues that since the plaintiffs can only challenge the statute as it existed in 2004, in light of amendments to the ordinance and related NYPD regulations between 2004 and today, the plaintiffs' request for declaratory and injunctive relief is now moot. (Def. Opp. Memo. at 16).

In early 2007, the NYPD amended its regulations in an attempt to remedy the overbreadth of the parading ordinance by limiting its applicability to "any procession or race which consists of a recognizable group of 50 or more pedestrians, vehicles, bicycles or other devices moved by human power." Five Borough Bicycle Club v. City of New York, 483 F. Supp. 2d 351, 359 (S.D.N.Y. 2007) (quoting what is now 38 R.C.N.Y. § 19-02). Therefore, it may well be that the request for declaratory and injunctive relief on the grounds that the ordinance is overbroad is moot. See Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo, 981 F.2d 50, 59 (2d Cir. 1992) (dismissing claim where defendant's implementation of an emergency

---

    section, shall, upon conviction thereof, be punished by
    a fine of not more than twenty-five dollars, or by
    imprisonment for not exceeding ten days, or by both such
    fine and imprisonment.

N.Y.C. Admin. Code § 10-110(a), (c).

regulation eliminated expectation that allegedly illegal conduct
would recur in the future).  However, there has been no definite
ruling that the NYPD's new regulation withstands constitutional
scrutiny.  Evaluating a facial challenge to this kind of ordinance
involves examination not only of its text, but also the practice of
the authority enforcing it, see MacDonald v. Safir, 206 F.3d 183,
191 (2d Cir. 2000), and there has been little time for such
practice to have been established.  More to the point, the
plaintiffs should still be able to assert a claim for damages that
can be attributed to overbroad enforcement under the 2004 scheme,
if any.  They are also not precluded from requesting declaratory or
injunctive relief for alleged constitutional defects other than
overbreadth.  For all of these reasons, it would be premature to
deny the plaintiff's motion to amend on grounds of futility.  See
id. at 190.  Likewise, the City's contention that the  individual
defendants would be entitled to qualified immunity because they
were not on notice that the parading ordinance was unconstitutional
in 2004 is more appropriately dealt with on summary judgment or at
trial.  See McKenna v. Wright, 386 F.3d 432, 434 (2d Cir. 2004)
(while "qualified immunity [] can be presented in a Rule 12(b)(6)
motion . . . the defense faces a formidable hurdle . . . [and
immunity] was properly rejected at this preliminary stage of
[plaintiff's] case").  In any event, qualified immunity for the
individual defendants would not release the City from liability.

Next, the City objects to the plaintiffs' facial challenges
because they "call into question the acts of the legislative body
of government," whereas the original complaints focused exclusively

15

on the policing actions of the NYPD. (Def. Opp. Memo. at 15). The City contends that the plaintiffs' amendments should be denied because the complaints did not put the City on proper notice from the outset of the scope of the litigation. In determining whether the defendants would be prejudiced by the amendment, I must consider whether it "would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute." Block v. First Blood Associates, 988 F.2d 344, 350 (2d Cir. 1993). The longer the period of unexplained delay, the lesser the showing of prejudice required of the nonmoving party. Evans v. Syracuse City School District, 704 F.2d 44, 47 (2d Cir. 1983). Although nothing prevented the plaintiffs from including such a claim from the outset, the defendants have not demonstrated any prejudice that would result from the addition of a facial constitutional challenge to Section 10-110. The City will already be required to defend against the claim, as it has already been included in other RNC actions dating back to 2005 (e.g., First Amended Complaint in Xu et al. v. City of New York, 05 Civ. 7672, ¶¶ 55, 67), and discovery is not likely to be burdensome in such a facial challenge. Thus, the interest in judicial economy and the liberality of Rule 15(a) tip the scale in favor of amendment.

With respect to the plaintiffs' new as-applied challenges to Section 10-110, the City asserts that significant and burdensome additional discovery would be required, delaying the final resolution of cases that are nearing the close of discovery. Specifically, the City insists that it would be necessary to gather

16

voluminous data about arrests, summonses, and desk appearance
tickets issued by the NYPD in contexts other than the RNC. (Def.
Opp. Memo. at 17). This would be true to the extent that the
plaintiffs are alleging that the NYPD enforced Section 10-110
disproportionately against them as compared to other groups of
people. However, this does not appear to be the case, as the
plaintiffs insist that their as-applied challenges are "not based
on a comparative analysis." (MacNamara and Abdell Reply 9-10).
The plaintiffs further explain that their as-applied challenges to
Section 10-110 consist of the application of Section 10-110 to
small groups and bystanders, on blocks closed to traffic during the
RNC, and at locations where the police had given demonstrators
permission to march without a permit. (MacNamara and Abdell Reply
at 11-12). These contentions do not raise claims of unequal
enforcement so much as they allege of overbroad enforcement.
Because they will not generate the kind of discovery the City
complains of, and because these issues will no doubt be litigated
in other RNC cases, amendment will be permitted to the extent that
the claims are thus limited in scope.

              2.    Penal Law Sections 240.20(5) and 240.20(6)

     The plaintiffs in 19 cases[10] seek leave to add facial and as-

---

        [10] The cases are MacNamara, Coburn, Phillips, Sloan, Galitzer,
Bastidas, Xu, Sikelianos, Drescher, Abdell, Adams, Araneda,
Eastwood, Dudek, Bell, Starin, Lee, Cohen, and Tikkun. The
plaintiffs in MacNamara propose to add only as-applied challenges
to each subsection. (MacNamara Second Amended Complaint at 98).
The plaintiffs in Abdell, Adams, Araneda, Eastwood, and Tikkun
propose to add  facial and as-applied challenges only to §
240.20(5). (E.g., Abdell Third Amended Complaint, ¶ 52; Tikkun
Amended Complaint, ¶ 187). The plaintiffs in Coburn, Phillips,
Sloan, Galitzer, Bastidas, Xu, Sikelianos, and Drescher appear to

applied constitutional challenges to Section 240.20 of the New York Penal Law, subsections 5 and 6, which govern disorderly conduct based on the obstruction of traffic and failure to disperse, respectively.[11]   The City opposes these amendments on grounds of futility, delay, and prejudice.

The plaintiffs' proposed facial challenges to subsection 5 of New York's disorderly conduct statute include assertions that: (1) the statute does not define what is meant by "obstructing" traffic, and (2) it does not require a person be warned before being arrested.   (MacNamara and Abdell Reply at 17).   As to the first challenge, the Supreme Court has held that use of the term "obstruct" in a state statute is not unconstitutionally vague. Cameron v. Johnson, 390 U.S. 611, 616 (1968) (the term "plainly require[s] no guessing at [its] meaning") (internal quotations

---

have previously asserted constitutional challenges to the disorderly conduct statute, although now seek leave to specify facial and as-applied challenges to § 240.20(5), and only as-applied challenges to § 240.20(6). (E.g., Red-Lined Phillips First Amended Complaint, ¶ 88). Finally, the plaintiffs in Dudek, Bell, Starin, Lee, and Cohen, state in a letter from their counsel that they propose to add facial and as-applied challenges to both subsections (Dudek Letter at 2); however, the only facial challenges in their proposed amended complaints are to § 240.20(5). (E.g., Red-Lined Lee Fourth Amended Complaint, ¶ 147).


[11]   The relevant text provides that:

A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or harm, or recklessly creating a risk thereof . . . (5) He obstructs vehicular or pedestrian traffic; or (6) He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse.

omitted).   The Second Circuit has also held, in passing on the constitutionality of the Vermont disorderly conduct statute, which likewise uses the term "obstruct" without further definition, that its meaning is sufficiently recognizable to the average person. Arbeitman v. District Court of Vermont, 522 F.2d 1031, 1033 (1975). Furthermore, the New York courts have specified that "obstruction" must be "[s]omething more than [] temporary inconvenience" to pedestrians, People v. Pearl, 66 Misc. 2d 502, 502-03, 321 N.Y.S.2d 986, 987 (1st Dep't  1971); accord People v. Jones, 9 N.Y.3d 259, __, 2007 N.Y. Slip Op. 9070, 9073 (2007), giving it a limiting construction that is properly considered by this Court.  Arbeitman, 522 F.2d at 1034 n.3.

As to the second challenge, while a warning and opportunity to disperse may be constitutionally required where one engages in conduct short of obstructing traffic, in this case, the term "obstruct" already "provides sufficient notice of what conduct is prohibited." People v. Tichenor, 89 N.Y.2d 769, 775, 658 N.Y.S.2d 233, 236-27 (1997) (collecting cases where constitutionality of New York's disorderly conduct has been upheld); see also Pearl, 66 Misc. 2d at 503-04, 321 N.Y.S.2d at 988 (holding that while defendant's blocking of crosswalk created only temporary inconvenience to pedestrians, and thus, was not adequate to sustain conviction under § 240.20(5), continued blocking of crosswalk after order and opportunity to disperse had been given did constitute an offense under § 240.20(6)).  In short, it would be futile to permit amendment to include facial constitutional challenges for the

disorderly conduct ordinance.[12]

_____Next, the City asserts, as it did with the parading statute, that the plaintiffs' as-applied challenges to the disorderly conduct statute should be rejected on grounds of delay and prejudice. (Def. Opp. Memo. at 20). The plaintiffs' as-applied challenges to Section 240.20, subsections 5 and 6, include allegations that the statute was used as a pretext to remove demonstrators where (1) there was no serious interference with traffic, (2) only a few demonstrators were blocking traffic at a location where the NYPD made mass arrests, (3) a crowd was sealed off without a reasonably audible order and opportunity to disperse, or (4) demonstrators had been given express permission to march. (MacNamara and Abdell Reply at 14-17). None of these claims would justify discovery regarding arrests and summons issued by the NYPD for disorderly conduct in contexts other than the RNC, as feared by the City. (Def. Opp. Memo. at 17). Given that the underlying factual allegations are already a part of these complaints, (e.g., MacNamara Second Amended Complaint, ¶¶ 73(E)-(J))(non red-lined portions); Abdell Third Amended Complaint, ¶¶ 23-25, 30 (non red-lined portions)), and that the same claims are at issue in other

---

[12] The City urges the Court to certify these questions for review by the New York Court of Appeals (Def. Opp. Memo. at 19), but certification is not appropriate where the state courts have had occasion to interpret a statute and where further state court elaboration is not necessary to avoid the constitutional question. It is not the case that a federal court "must certify whenever [] a plaintiff raises a federal constitutional challenge to state law." Tunick v. Safir, 209 F.3d 67, 73 (2d Cir. 2000) (reviewing grounds for certification and ultimately certifying in light of "absence of authoritative, on-point state court decisions," among other factors).

RNC complaints, including those dating back to 2005, (e.g., First Amended Complaint in <u>Xu et al. v. City of New York</u>, 05 Civ. 7672, ¶¶ 55, 67), the City has been on notice of these claims and will not be unduly prejudiced by having to litigate them.  <u>See</u> <u>S.S. Silberblatt, Inc. v. East Harlem Pilot Block Building 1 Housing Development Fund Co.</u>, 608 F.2d 28, 43 (2d Cir. 1979)("[T]he burden of undertaking discovery, which [the defendant] would have shouldered had the proposed amendment been incorporated in the complaint as originally filed, hardly amounts to prejudice outweighing the policy of Rule 15(a) in favor of permitting the parties to obtain an adjudication of the merits."); <u>Xpressions Footwear Corp. v. Peters</u>, Nos. 94 Civ. 6136, 95 Civ. 8242, 95 Civ. 8243, 1995 WL 758761, at *2 (S.D.N.Y. Dec. 22, 1995) (amendment permitted where new claims "are closely related to the original claim, and are foreshadowed in earlier pleadings").  Amendment to add the as-applied challenges will be permitted.

### 3.   Criminal Procedure Law Sections 160.10 and 160.50

Next, the plaintiffs in nine cases propose to add new state law claims under CPL § 160.10 which relates to the circumstances under which an individual should be fingerprinted, and Section 160.50, which relates to the destruction or return of fingerprints and other personal information after charges are dismissed.[13]  All

---

[13]  The relevant text of Section 160.10 provides that:
The arresting or other appropriate police officer or agency must take or cause to be taken fingerprints of the arrested person or defendant if an offense which is the subject of the arrest or which is charged in the accusatory instrument filed is: (a) A felony; or (b) A misdemeanor defined in the penal law; or . . . (d) Loitering . . . .  In addition, a police officer who

but the _MacNamara_ plaintiffs in these same cases also propose to
add a federal constitutional claim that relates to alleged
violations of Section 160.50.[14]

The City argues that the plaintiffs' federal claim must fail
because there is no constitutional right implicated by Section
160.50 sufficient to support a Section 1983 claim.  It maintains
that the proper remedy for those plaintiffs whose charges were
dismissed is to seek sealing of the record before the relevant
criminal court.  (Def. Opp. Memo. at 21).  In response to the
City's argument, the plaintiffs rely on _Anderson   v. City of New
York_, 611 F. Supp. 481 (S.D.N.Y. 1985), in which a plaintiff whose

---

makes an arrest for any offense . . . may take or cause
to be taken the fingerprints of the arrested person if
such police officer: (a) Is unable to ascertain such
person's identity; or (b) Reasonably suspects that the
identification given by such person is not accurate; or
(c) Reasonably suspects that such person is being sought
by law enforcement officials for the commission of some
other offense.

Section 160.50 states:

Upon the termination of a criminal action or proceeding
against a person in favor of such person . . . the record
of such action or proceeding shall be sealed . . . . Upon
receipt of notification of such termination and sealing:
(a) every photograph . . . and all palmprints and
fingerprints taken or made of such person . . . shall
forthwith be, at the discretion of the recipient agency,
either destroyed or returned to such person, or the
attorney who represented such person at the time of the
termination of the action or proceeding.

[14]  These cases are _MacNamara_, _Coburn_, _Phillips_, _Sloan_,
_Galitzer_, _Bastidas_, _Xu_, _Sikelianos_, and _Drescher_. (E.g., _Phillips_
First Amended Complaint, ¶¶ 83 (federal claim), 133-35 (state
claims)).   As discussed above, various other plaintiffs have
proposed to add a federal constitutional claim relating to alleged
violations of Section 160.10; however, the City is not opposing
those amendments at this time.  (Def. Opp. Memo. at 22 n.22).

photograph had been illegally retained by police and subsequently used in an identification array was permitted to bring a Section 1983 claim.  However, subsequent decisions by this Court have cast doubt on the holding in that case.  For example, in  Grandal v. City of New York, 966 F. Supp. 197, 202 (S.D.N.Y. 1997), the Court explained:

> Anderson relied, in part, on [an older Supreme Court decision] which held that a state statute can create a constitutionally protected liberty interest if it contains language of an unmistakably mandatory character such that the intrusion on one's liberty would not occur absent specified substantive predicates. . . . [H]owever, the Supreme Court [later] abandoned [that] approach . . . finding that it "strayed from the real concerns undergirding the liberty protected by the Due Process Clause."

Id. at 202 (quoting Sandin v. Conner, 515 U.S. 472, 483 (1995)) (internal quotation marks and citations omitted); see also Sylvester v. City of New York, 385 F. Supp. 2d 421, 440 (S.D.N.Y. 2005) (noting that, in light of developments in state and federal law after Anderson, "there is reason to question [its] continuing vitality").  Even were I to find Anderson persuasive, I agree with Grandal and Sylvester that its application would be limited to cases where there the plaintiff has alleged "deliberate indifference, gross negligence and acquiescence in a prior pattern of misconduct," Grandal, 966 F. Supp. at 202 (internal quotation omitted), and "specific allegations of harm to reputation . . . and the accused's employment, education, professional licensing and insurance opportunities." Sylvester, 385 F. Supp. 2d at 440.  That is not the case here.  The motion to amend to add federal claims arising from violations of Section 160.10 is therefore denied.

23

The direct claims under Sections 160.10 and 160.50 are new state law claims.[15]  As such, they are subject to New York General Municipal Law Section 50(i), which requires that any action against the City for "personal injury, wrongful death or damage to real or personal property" be "commenced within one year and 90 days after the happening of the event upon which the claim is based."  N.Y. Gen. Mun. Law § 50(i).  In addition, the plaintiffs must comply with Section 50(e), which generally requires that a notice of claim be served upon the municipality within 90 days.  N.Y. Gen. Mun. Law § 50(i).  Because plaintiffs' motions to amend were filed almost three years after they were arrested and fingerprinted, and because no notices of claim were properly served, these claims are time-barred.  See Johns v. Town of East Hampton, 942 F. Supp. 99, 109 (E.D.N.Y. 1996) (dismissing plaintiff's pendent state statutory claims regarding arrest and detention procedures for failure to comply with N.Y. Gen. Mun. Law § 50(e) and (i)).  Leave to amend to add claims under Sections 160.10 and 160.50 of the CPL is therefore denied.

### 4.   Other State Law Claims

The plaintiff in Grosso also proposes to add new state law causes of action.  Specifically, she seeks leave to modify the

---

[15]   The MacNamara plaintiffs only propose to add a state law claim for violations of Section 160.10 and not Section 160.50; though this change is not listed in their moving papers, it does appear in their proposed amended complaint.  (MacNamara Second Amended Complaint, ¶ 257(k)).  And although counsel for Coburn, Phillips, Sloan, Galitzer, Bastidas, Xu, Sikelianos, and Drescher indicates that the state law claims "were already an integral part of their pleadings" (Coburn Reply at 2), the previous complaints contained only factual allegations that could fairly be construed as supporting a federal constitutional claim.  (E.g., Phillips First Amended Complaint, ¶ 54).

basis for her claims under the New York State Constitution to include a challenge to the fingerprinting policy and the alleged falsification of statements relating to her arrest. (<u>Grosso</u> Third Amended Complaint, attached as Exh. 1 to Letter of Robert F. Finkelstein dated Aug. 30, 2007, ¶¶ 102, 106, 110).  The City argues that these claims are time-barred.  Although the statute of limitations for state law claims against the City is typically one year and 90 days, claims arising under the New York State Constitution are more akin to federal constitutional claims.  For this reason, the New York State Court of Appeals has ruled that the statute of limitations for state constitutional claims against a municipality should be governed by the same principles as that for Section 1983 claims.  <u>423 South Salina Street, Inc. v. City of Syracuse</u>, 68 N.Y.2d 474, 482, 510 N.Y.S.2d 507, 510 (1986) ("We conclude that . . . the complaint states a cause of action [under the state constitution] to which the three-year statute applies.").  Accordingly, Ms. Grosso may amend her complaint to add the new state constitutional claims.

5.  <u>Right to a Fair Trial</u>

The plaintiffs in 14 cases seek leave to add a new federal constitutional claim for the denial of the right to a fair trial arising from the NYPD's alleged falsification of sworn statements that formed the basis of the plaintiffs' detentions and subsequent

criminal prosecutions.[16]   The City opposes the addition of these claims, arguing that they are futile.

The City argues that the presentation of false evidence at trial is a prerequisite to a due process claim for a violation of the right to a fair trial. (Def. Opp. Memo. at 24).   Because only six of the approximately 150 plaintiffs in these cases had their cases proceed to trial, with the rest pleading guilty or accepting a dismissal, the City contends that only those six may assert such a claim and that the rest are limited to claims under the Fourth Amendment.   (Def. Opp. Memo. at 24).

While plaintiffs who allege prosecution based on falsified information certainly have a claim for malicious prosecution under the Fourth Amendment, they may also have a claim for violation of due process.   "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." Ricciuti, 124 F.3d at 130.   In Ricciuti, the Second Circuit specifically treated the fabrication of evidence as an independent constitutional tort.   See also Jovanovic v. City of New York, No. 04 Civ. 8437, 2006 WL 2411541, at *13 (S.D.N.Y. Aug. 17, 2006) ("[Claims have been permitted for] malicious prosecution and denial of a fair trial based on the same fabrication of evidence. . . . As

---

[16] These cases are Bunim, Kalra, Ryan, Garbini, Greenwald, Pickett, Tremayne, Biddle, Moran, Botbol, Crotty, Stark, Lalier, and Tikkun.   (E.g., Bunim Fourth Amended Complaint, ¶¶ 99-103; Tikkun Amended Complaint, ¶¶ 169-173).

these causes of action seem to coexist, [p]laintiff may legitimately bring both."). A subsequent decision has added a layer of complexity to this principle, however. In _Jocks v. Tavernier_, 316 F.3d 128 (2d Cir. 2003), the Second Circuit seemed to characterize _Ricciuti_ as holding simply that the existence of probable cause at the time of the arrest could not vitiate liability for the post-arrest falsification of evidence. _Id._ at 138. It did not appear to view _Ricciuti_ as creating a separate due process right, and instead characterized _Ricuitti_ as a malicious prosecution case. _Id._; _see also_ _Richardson v. City of New York_, No. 02 CV 3651, 2006 WL 2792768, at *6-7 (E.D.N.Y. Sept. 27, 2006) (discussing _Jocks_ and _Ricciuti_). Nevertheless, the possibility remains that a plaintiff could bring both claims in the alternative. Thus, the addition of a due process claim would hardly be futile.

Furthermore, it does not seem that trial is a prerequisite to such a claim. Indeed, the plaintiffs in _Ricciuti_ were not tried; the charges against them were dismissed after a number of adjournments. 124 F.3d at 127. In another case, the Court noted that a fair trial claim would have been available to a plaintiff who did not proceed to trial, but concluded that the evidence did not adequately support an allegation of fabrication. _Canario v. City of New York_, No. 05 Civ. 9343, 2006 WL 2015651, at *2-4 (S.D.N.Y. July 12, 2006) (charges dismissed prior to any criminal proceeding). The limiting factor appears to be not whether the plaintiff went to trial but whether the falsification caused material harm. _See, e.g._, _Henry v. City of New York_, No. 02 Civ.

4824, 2003 WL 22077469, at *4 (S.D.N.Y. Sept. 8, 2003) (plaintiff entitled to damages for violation of right to fair trial "[i]f [his] deprivation of liberty" between arrest and release "was caused by the fabrication of evidence").

Given that the existence of probable cause and any relationship between the alleged falsification of sworn statements and the plaintiffs' detention will be questions of fact, leave to amend is granted so that the plaintiffs may pursue these claims.

    E.   Factual Supplementations

Finally, the plaintiffs in eight actions seek leave to add certain factual allegations concerning Mayor Michael Bloomberg and Police Commissioner Kelly's (1) public statements about demonstrators in the period leading up to the RNC, and (2) denial of a permit for a rally at Central Park's Great Lawn.[17]   The defendants argue that, to the extent the plaintiffs are attempting to incorporate these allegations into a cause of action, they should be rejected as futile because they do not rise to the level of constitutional violations.  (Def. Opp. Memo. at 22).  The plaintiffs insist that they propose to include them "to provide relevant factual background concerning defendants' discriminatory animus . . . . [and they are] not meant to represent independent claims.  (Coburn Reply at 7).

The plaintiffs must be taken at their word that they do not intend to assert new claims by these allegations, and thus there is

---

[17] These cases are Coburn, Phillips, Sloan, Galitzer, Bastidas, Xu, Sikelianos, and Drescher.  (E.g., Phillips First Amended Complaint, ¶¶ 65-66)

no need to reach the City's futility argument.  To be sure, if not for their placement in the "Facts" section, the allegations concerning the Great Lawn permit could be confused as attempting to assert a First Amendment claim.  But background allegations are nothing more than that.  They do not constitute evidence of the claims in this litigation, and their addition to the complaint will not change the scope of discovery.[18]  Courts have denied leave to amend where the amendments constitute "mere elaboration and increased verbiage concerning the same core allegations initially put forward" in the complaint.  O'Brien v. Price Waterhouse, 740 F. Supp. 276, 284 (S.D.N.Y. 1990).  However, in the absence of any showing of bad faith or prejudice, there is no reason not to permit them.  See In re Enron Corp., 367 B.R. 373, 384 (Bankr. S.D.N.Y. 2007) (permitting amendment to add factual allegations even though changes were arguably "superfluous"); Torn v. Rosen, No. 82 Civ. 3130, 1984 WL 734, at *3 (S.D.N.Y. Aug. 6, 1984) (treating prejudice as more relevant inquiry even where plaintiff used amendment to "sharpen, and thereby arguably alter, the facts asserted in the complaint").

Conclusion

The plaintiffs' motions are granted in part and denied in part as set forth above.  Within 10 days, the plaintiffs shall serve and file amended complaints that conform with this order.

---

[18]  The pending Section 1983 action discussed by the plaintiffs challenging the denial of a permit has since terminated in a settlement between the parties.  (Stipulation and Order of Voluntary Dismissal dated Jan. 9, 2008, National Council of Arab Americans and Act Now to Stop War and End Racism Coalition v. City of New York, No. 04 Civ. 6602).

SO ORDERED.

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:      New York, New York
            January 23, 2008

Copies mailed this date:

Christopher Dunn, Esq.
Palyn Hung, Esq.
New York Civil Liberties Union
125 Broad Street, 19th Floor
New York, New York 10004

Jonathan C. Moore, Esq.
Clare Norins, Esq.
Beldock Levine & Hoffman LLP
99 Park Avenue
New York, New York 10016

Robert F. Finkelstein, Esq.
Allegaert, Berger & Vogel LLP
111 Broadway, 20th Floor
New York, New York 10006

Michael L. Spiegel, Esq.
111 Broadway, Suite 1305
New York, New York 10006

Jeffrey A. Rothman, Esq.
315 Broadway, Suite 200
New York, NY 10007

James I. Meyerson, Esq.
64 Fulton Street, Suite 502
New York City, NY 10038

Rose M. Weber, Esq.
225 Broadway, Suite 1608
New York, NY 10007

Andrea J. Ritchie, Esq.
428 Park Place, #2B
Brooklyn, NY 11238

Case 1:05-cv-07673-RJS-JCF   Document 80   Filed 01/23/08   Page 33 of 33

Lionel C. Reifler, Esq.
Raju Sundaran, Esq.
Special/Assistant Corporation Counsel
100 Church Street
New York, New York 10007

31