UNITED STATES DISTRICT COURT **(ECF)**
SOUTHERN DISTRICT OF NEW YORK

MICHAEL SCHILLER, et al.,

Plaintiffs,

- against -

THE CITY OF NEW YORK, et al.,

Defendants.

04 Civ. 7922 (RJS) (JCF)

HACER DINLER, et al.,

Plaintiffs,

- against -

THE CITY OF NEW YORK, et al.,

Defendants.

04 Civ. 7921 (RJS) (JCF)

MEMORANDUM AND ORDER

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

These are two of the cases arising out of the arrest of more than 1,800 demonstrators during the Republican National Convention (the "RNC") in New York City in 2004. On May 16, 2008, over one and one-half years after fact discovery closed for these two cases, the defendants identified eighty-four previously undisclosed witnesses. The plaintiffs now move to preclude the defendants from relying upon these witnesses.

Background

On October 7, 2004, approximately a month after the conclusion of the RNC, the plaintiffs brought these two cases against the City of New York and officials of the City and of the New York City

Police Department (the "NYPD").  The Schiller case arises out of a mass arrest on August 31, 2004 on Fulton Street near the World Trade Center site (Schiller Second Amended Complaint, ¶ 2); the Dinler case was spawned by a mass arrest the same day on East 16th Street near Union Square. (Dinler Third Amended Complaint, ¶ 3).

In March and April of 2005, the parties exchanged initial disclosures pursuant to Rule 26(a) of the Federal Rules of Civil Procedure. (Affirmation of Palyn Hung dated July 23, 2008 ("Hung Aff."), ¶ 3).  In the Schiller case, the defendants identified three police officers as witnesses and designated seven documents consisting of 163 pages.  (Hung Aff., ¶ 4; Defendants' Disclosures Pursuant to F.R.C.P. Rule 26(a), attached as Exh. A to Hung Aff.). In the Dinler case, the defendants named three police officers and one deputy inspector as witnesses, and identified two DVDs and two documents consisting of twelve pages.  (Hung Aff., ¶ 5; Defendants' Disclosures Pursuant to F.R.C.P. Rule 26(a), attached as Exh. B to Hung Aff.).  On July 15, 2005, the defendants supplemented their Dinler disclosures to add a second deputy inspector as a witness. (Hung Aff., ¶ 6; Defendants' First Supplemental Disclosures Pursuant to FRCP 26(a), attached as Exh. C to Hung Aff.).

Discovery proceeded.  As the discovery deadline approached, plaintiffs' counsel sent a letter reminding defendants' counsel of their obligation under the Federal Rules of Civil Procedure to supplement initial mandatory disclosures. (Hung Aff., ¶ 7; Letter

of Christopher Dunn dated Sept. 27, 2006, attached as Exh. D to Hung Aff.). In this letter, the plaintiffs warned the defendants that failure to supplement their fact witness disclosures before the discovery deadline would preclude reliance upon undisclosed witnesses in later proceedings. (Hung Aff., ¶ 7; Letter of Christopher Dunn dated Sept. 27, 2006, attached as Exh. D to Hung Aff.). The defendants disagreed with the plaintiffs' position, and further indicated that they had no intention of supplementing their initial disclosures in the near future. (Hung Aff., ¶ 8; Letter of Peter G. Farrell dated Oct. 20, 2006, attached as Exh. E to Hung Aff.). When the issue was raised at a October 24, 2006 status conference, I strongly advised the defendants to supplement their disclosures before the end of discovery. (Hung Aff., ¶ 9; Excerpts from Transcript of Conference dated Oct. 24, 2006, attached as Exh. F to Hung Aff.).

On December 12, 2006, three days before the discovery deadline and after a summary judgment schedule had been set, the defendants identified approximately 130 additional witnesses with relevant knowledge, purportedly supplementing their mandatory disclosures. (Hung Aff., ¶¶ 11-12; Letter of Peter G. Farrell dated Dec. 12, 2006, attached as Exh. I to Hung Aff.; Declaration of Odile M. Farrell dated Aug. 8, 2008 ("Farrell Decl."), ¶ 6). The plaintiffs objected to these new disclosures. Although the parties reached resolution with respect to most of those witnesses, they disagreed

about whether one particular witness, Deputy Commissioner David Cohen, should be permitted to testify. (Hung Aff., ¶ 13).   I ultimately decided that dispute, denying in part plaintiffs' motion because precluding Deputy Commissioner Cohen's testimony would prevent full legal analysis of questions with great public significance. See Schiller v. City of New York, No. 04 Civ. 7922, 2007 WL 735010 (S.D.N.Y. March 12, 2007). In so holding, however, I found that "the defendants breached their disclosure obligations and have offered no legitimate excuse." Id. at *4. Accordingly, I ordered the defendants to reimburse the plaintiffs for all costs incurred in connection with the reopened discovery, including reasonable attorneys' fees. Id. In addition to ameliorating the prejudice to the plaintiffs, I hoped that awarding costs and fees to the plaintiffs would deter future discovery violations. Id.

Since that time, the Schiller and Dinler cases have been stalled pending decision on a separate discovery issue, the production and sealing of certain intelligence documents proffered by the defendants. (Hung Aff., ¶ 13). With the exception of this narrow issue, all other fact discovery in the these cases ended on December 15, 2006. See Schiller, 2007 WL 735010, at *1. Meanwhile, discovery in the other consolidated RNC cases has been ongoing.[1] (Def. Memo. at 2-4).

---

[1] To date, a total of 107 RNC-related cases have been filed against the defendants. (Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Preclude ("Def. Memo.") at 2).

Periodically during 2007 and 2008, the defendants e-mailed what they describe as "periodic supplemental disclosures" to all RNC counsel, including counsel for Schiller and Dinler. (Def. Memo. at 3; Letter of Liora Jacobi dated June 4, 2007, Letter of Liora Jacobi dated June 29, 2007, Letter of Gerald S. Smith dated April 4, 2008, and Letter of Fred M. Weiler dated May 16, 2008 (the "Mass Update Letters"), attached as Exh. D to Farrell Decl.). Each of these letters listed a large number of individuals with knowledge of various RNC-related protests and arrests.[2] (Mass Update Letters). These individuals were organized by location and date, but no explicitly case-specific information was provided to counsel in the letters.

On May 16, 2008, the defendants sent a letter directly to counsel for the Schiller and Dinler cases with "a supplemental list of individuals Defendants may rely upon in defense against Plaintiffs' claims." (Letter of Gerald S. Smith dated May 16, 2008 ("Smith 5/16/08 Letter"), attached as Exh. K to Hung Aff.). This list included eighty-four previously undisclosed witnesses. (Hung Aff., ¶ 16; Smith 5/16/08 Letter at 2-4). Three of these witnesses

---

In 2005, all RNC cases, including Schiller and Dinler, were consolidated for discovery purposes.

[2] Specifically, the April 4, 2008 letter listed twenty-two names and the June 29, 2007 and May 16, 2008 letters listed forty-four names. The June 4, 2007 letter listed hundreds of names. (Mass Update Letters).

were described as "Individuals with Knowledge of the Planning, Policing, Prosecution, and Arrest Processing for the RNC" (the "Policy Witnesses"). (Smith 5/16/08 Letter at 4). The remaining witnesses were arranged in two categories by location (the "Arrest Location Witnesses"); they had knowledge either of the August 31, 2004 arrests on Fulton Street or of the August 31, 2004 arrests near Union Square. (Smith 5/16/08 Letter at 2-4). The letter provided no further indication of what particular information any of these individuals might possess.

The plaintiffs then filed the instant motion to preclude the defendants from relying upon testimony from any of the witnesses who were first identified in that May 16, 2008 letter.

Discussion

A. Legal Framework

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, each party must, "without awaiting a discovery request," identify "each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses . . . ." Fed. R. Civ. P. 26(a)(1)(A). The rules also create an obligation to supplement all Rule 26(a) initial disclosures. Supplemental disclosures must be made "in a timely manner" when a "party learns that in some material respect the [information disclosed] is incomplete or incorrect, and if the additional or corrective information has not otherwise been made

known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1).

Rule 37 of the Federal Rules of Civil Procedure "establishes the mechanisms" that make Rule 26 effective. 8A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2281 (2d ed. 1994). Its purpose is "to provide parties with an incentive to disclose, in a timely manner, all material evidence and to prevent the practice of sandbagging an adversary with new evidence at trial." Johnson Electric North America Inc. v. Mabuchi Motor America Corp., 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999) (quotation marks and citation omitted). Specifically, Rule 37 provides sanctions for failing to meet disclosure obligations.

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;(B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions . . . .

Fed. R. Civ. P. 37(c)(1). The burden to prove substantial justification or harmlessness rests with the dilatory party. American Stock Exchange, LLC v. Mopex, Inc., 215 F.R.D. 87, 93 (S.D.N.Y. 2002); accord Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1107 (9th Cir. 2001) ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to

prove harmlessness."); Wilson v. Bradlees of New England, Inc., 250 F.3d 10, 21 (1st Cir. 2001)("[I]t is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with the Rule was either justified or harmless and therefore deserving of some lesser sanction.").

Despite the seemingly mandatory language of Rule 37(c), courts in this circuit have exercised considerable discretion when deciding whether, and which, sanctions are appropriate. Outley v. City of New York, 837 F.2d 587, 590 (2d Cir. 1988). In utilizing this discretion, courts consider four factors:

> (1) the party's explanation for the failure to comply with the discovery [requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

Softel, Inc. v. Dragon Medical & Scientific Communications, Inc., 118 F.3d 955, 961 (2d Cir. 1997) (citing Outley, 837 F.2d at 590-91); accord Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006). The imposition of sanctions under Rule 37(c)(1), including the preclusion of evidence, does not require a showing of bad faith on the part of the offending party. Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006).

B. Rule 26 Obligations

Primarily, the defendants argue that by identifying the eighty-four witnesses in the May 16, 2008 letter, they properly supplemented their Rule 26(a) mandatory disclosures, rendering Rule

37(c) inapplicable. In support of this position, the defendants contend that the Mass Update Letters continuously supplemented their discovery responses in all RNC cases, including Schiller and Dinler. (Def. Memo. at 4-5). Therefore, the defendants argue, the plaintiffs had sufficient prior notice of the eighty-four witnesses at issue. (Def. Memo. at 4-5).

A recent case in this district, Pal v. New York University, No. 06 Civ. 5892, 2008 WL 2627614 (S.D.N.Y. June 30, 2008), involved similar issues. The defendant argued that it previously satisfied its disclosure obligations by providing documents to the plaintiff that included the additional witnesses' names, so Rule 37(c) was inapplicable. Id. at *4. The court rejected the defendants' position outright:

> This argument misses the crucial point. [The plaintiff's] knowledge of the existence of a witness does not satisfy the Rule 26(a)(1)(A) disclosure obligation; that obligation is fulfilled only if [the defendant] informed [the plaintiff] that it might call the witness in support of its claims or defenses. . . . The purpose of this disclosure is to alert an opposing party of the need to take discovery of the named witness. [The defendant's] late disclosure of the four witnesses here simply did not provide [the plaintiff] with fair warning of the need to take discovery from them. [The defendant] consequently did not comply with Rule 26(a)(1)(A).

Id. at *4.

Likewise, the Mass Update Letters provide no defense here. These letters were addressed and sent to "All RNC Counsel." (Mass Update Letters). Schiller and Dinler, however, have remained

distinct cases for substantially all discovery purposes. The plaintiffs had no reason to assume that the Mass Update Letters pertained to them, especially as the substance of the letters offered no explicit case-specific information. (Mass Update Letters). The May 16, 2008 letter was the first communication directed to Schiller and Dinler counsel specifically identifying the eighty-four witnesses at issue today.[3]

As noted above, that letter was sent roughly a year and one-half after discovery ended in Schiller and Dinler.[4] All but two of the eighty-four newly identified witnesses are NYPD law enforcement personnel, and therefore party witnesses. (Smith 5/16/08 Letter at 2-4). It is hard to imagine, and the defendants fail to explain, why they could not have identified their own employees prior to the close of discovery in December 2006, more than two years after the case was filed.

Modern discovery rules are meant to facilitate "fair and expeditious preparation of cases." Dienstag v. Bronsen, 49 F.R.D. 327, 329 (S.D.N.Y. 1970). Furthermore, "[a] party is not excused from making its disclosures because it has not fully investigated

---

[3] Indeed, 28 of these witnesses were not "previously" disclosed in Mass Update Letters, but rather were first identified in the Mass Update Letter sent to all RNC counsel that same day. (Hung Aff., Exh. K; Farrell Aff., Exh. D).

[4] In a marked contrast to this case, the defendant in Pal submitted its tardy supplemental disclosure on the final day of discovery, albeit after business hours. 2008 WL 2627614, at *2.

the case." Fed. R. Civ. P. 26(a)(1)(E). There is no doubt that the defendants breached their Rule 26 discovery obligations either by failing to disclose fully at the outset or by subsequently failing to supplement in a timely manner. Either way, the defendants' actions trigger sanctions under Rule 37(c).

   C.   Sanctions for Failure to Comply with Rule 26 Obligations
        1.   Proffered Justification

   In determining the propriety of relief under Rule 37, the first step is to analyze the justifications offered by the non-complying party to explain why it breached its discovery duties. See Fed. R. Civ. P. 37(c) (sanctions inappropriate if breach is "substantially justified"); Softel, 118 F.3d at 961. The main justification offered by the defendants is discussed above:  the defendants assert that they properly supplemented their disclosures through the Mass Update Letters, but they provide no support for that contention as it pertains to the Schiller and Dinler cases specifically. (Def. Memo. at 7).

   The defendants also allege that it was "nearly impossible" to identify the eighty-four new witnesses by December 2006.  (Def. Memo. at 7). However, the defendants offer no further explanation for this unlikely proposition as it pertains to their own employees, and scarcely more reason for their tardy disclosure of Ian Clifford and Gary Galperin, the two non-party witnesses. The defendants first identified Ian Clifford, the sole non-party Arrest

Location Witness, on November 15, 2007 during a deposition taken in Karlin v. Murtagh, No. 05 Civ. 7789, another RNC case. (Def. Memo. at 9; Deposition of Ian Clifford ("Clifford Dep."), attached as Exh. O to Farrell Decl.). They offer absolutely no excuse, however, for the six-month delay between that deposition and their issuance of the May 16, 2008 disclosure letter. In October 2007, the Manhattan District Attorney's office designated Assistant District Attorney Galperin as the individual "most knowledgeable about the RNC prosecutions." (Def. Memo. at 3-4, 8). Shortly thereafter, he was deposed in MacNamara v. City of New York, No. 04 Civ. 9216, another RNC case. (Def. Memo. at 3-4, 8). However, to the extent they considered such information relevant, the defendants were fully capable of taking their own discovery of the District Attorney's office prior to the close of discovery in Schiller and Dinler. Again, there is simply no excuse for their delay. In sum, the defendants have failed to justify why any of the eighty-four witnesses were not directly disclosed to the Schiller and Dinler plaintiffs in a reasonably timely manner.

      2.   Importance of the Evidence

The second prong of the Softel analysis is the importance of the evidence proffered. 118 F.3d at 961. The Arrest Location Witnesses comprise eighty-one of the eighty-four new witnesses

offered. (Smith 5/19/08 Letter at 2-4). With one exception,[5] the defendants have completely failed to expound upon the anticipated testimony of any Arrest Location Witness. Instead, they baldly assert that the Arrest Location Witnesses have important and necessary testimony.[6] (Def. Memo. at 7). The only logical inference, given the defendants' inability to articulate why these witnesses are important, is that the anticipated testimony of eighty Arrest Location Witnesses is either utterly unknown or insignificant.

The defendants describe the anticipated testimony of four witnesses: Ian Clifford, the sole non-party Arrest Location Witness, and the three Policy Witnesses. (Def. Memo. at 8-9). Mr. Clifford witnessed and filmed some arrests made near Union Square on August 31, 2004. (Def. Memo. at 9; Clifford Dep.). However, the facts presented do not indicate, and the defendants do not allege, that Mr. Clifford has any particular knowledge of the arrest of any Schiller or Dinler plaintiff. The defendants thus fail to show that Mr. Clifford's anticipated testimony is relevant, let alone important.

---

[5] Ian Clifford is the only Arrest Location Witness whose anticipated testimony is described by the defendants. (Def. Memo. at 9).

[6] The defendants take a seemingly contradictory position later in their brief, however, by claiming that the plaintiffs need not conduct depositions of the Arrest Location Witnesses because these witnesses lack specific knowledge about the Schiller and Dinler plaintiffs. (Def. Memo. at 8).

Assistant District Attorney Galperin, Lieutenant Eugene White, and Lieutenant Raymond Spinella are offered as the Policy Witnesses. Mr. Galperin was the Deputy Chief of the Trial Division of the NYPD at the time of the RNC. (Letter of Odile Farrell dated July 10, 2008, attached as Exh. M to Farrell Decl., at 1). Mr. Galperin's testimony is necessary, according to the defendants, for three reasons: "it relates to the issue of probable cause for arrest based on group conduct, the [District Attorney's] procedure for selecting charges and the disposition of cases." (Def. Memo. at 8). The latter two reasons are inapplicable to Schiller and Dinler, which concern unlawful arrests, not wrongful prosecutions. (Schiller Second Amended Complaint, ¶¶ 1-6, 10-11; Dinler Third Amended Complaint, ¶¶ 1-5). The first reason, on the other hand, touches upon an issue of great importance in the Schiller and Dinler cases: probable cause for the plaintiffs' arrests. However, the defendants do not allege that Mr. Galperin has any particular knowledge of the arrest of any Schiller or Dinler plaintiff. Furthermore, probable cause is a legal, not factual issue. The Court will decide whether sufficient probable cause existed with respect to any of the plaintiffs. See, e.g., United States v. Delossantos, 536 F.3d 155, 159 (2d Cir. 2008) (explaining that courts "must examine the totality of the circumstances of a given arrest" when determining whether probable cause existed) (citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)). Mr.

Galperin's legal opinion concerning probable cause for the arrests made in Schiller and Dinler is inadmissible. See United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991) (holding that while an expert witness may offer factual conclusions, expert testimony on issues of law is generally inadmissable).

Lieutenant Whyte worked for the Deputy Commissioner of Public Information during the RNC and can testify to New York City's official policies concerning the issuance of press passes and treatment of members of the press. (Def. Memo. at 8). The defendants contend that this testimony is important because Michael Schiller, one of the plaintiffs, alleges that he was filming a documentary at the time of his arrest, and told this to police in an attempt to be released. (Def. Memo. at 9). The defendants do not claim, however, that Lieutenant Whyte has particular knowledge of Mr. Schiller's arrest, nor do they suggest any other significant connection between Lieutenant Whyte and Mr. Schiller.[7] Lieutenant Whyte's anticipated testimony appears to be only tangentially related to Mr. Schiller's case.

Lieutenant Spinella has knowledge about police training. (Def. Memo. at 9). His testimony is offered to replace that of the late Deputy Commissioner of Training James Fyfe, an individual who was identified by the defendants in response to the plaintiffs'

[7] Mr. Schiller does not allege that he had a press pass. (Reply Memorandum of Law in Support of Plaintiffs' Motion to Preclude at 7).

first set of interrogatories. (Def. Memo. at 9; Defendants' Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories, attached as Exh. N to Farrell Decl., at 8). The defendants provide no further details.[8] By itself, the death of a previously identified witness provides no explanation for the addition of a different witness; the defendants still bear the burden of articulating why Lieutenant Spinella's testimony is necessary. The defendants, however, fail to describe Lieutenant Spinella's anticipated testimony and offer no explanation as to why Commissioner Frye's expected testimony warranted replacement.

3. Possibility of Prejudice

The third factor to be considered is the prejudice to the party opposing the newly proffered evidence. Softel, 118 F.3d at 961; see also Outley, 837 F.2d at 590-91 ("Before the extreme sanction of preclusion may be used . . . a judge should inquire more fully into the actual difficulties which the violation causes."). The plaintiffs, of course, lost months and months of time during which they could have been investigating the information possessed by these newly-identified individuals. Reopening discovery at this point in the proceedings will prejudice the plaintiffs, particularly if they are deluged with eighty-four new witnesses. That plaintiffs' counsel in other RNC cases have

[8] Notably, the defendants do not state when Mr. Fyte died or offer any explanation of why they are offering Lieutenant Spinella's testimony at this time.

deposed "many of these witnesses already" (Def. Memo. at 7) does nothing to alleviate the burden posed by eighty-four new witnesses. The Schiller and Dinler plaintiffs must have their own opportunity to take full discovery of every witness added; therefore, every additional witness threatens to consume a considerable amount of the plaintiffs' time and money.

4. Possibility of a Continuance

The final factor is the possibility of a continuance. Currently, no date is scheduled for a summary judgment motion or for trial, so a continuance is certainly possible. However, Schiller and Dinler have been repeatedly stalled. "[T]he enormous length of every step of the proceedings . . . militate[s] against any more continuances." Softel, 118 F.3d at 963. In addition, and as I have said before, these cases pose questions of great public significance. Schiller, 2007 WL 735010, at *4. To allow delay after delay deprives the parties and the public of answers regarding the proper balance between protecting protestors' free speech and allowing law enforcement officials to maintain public order.

5. Resolution

After considering each of these factors, I find that the defendants may not use any of the proffered Arrest Location Witnesses or Policy Witnesses to supply evidence on any motion, at any hearing, or at trial. As discussed above, the defendants have

disregarded the federal discovery rules. Further, they have failed to explain why they are now offering the Arrest Location Witnesses. Mr. Clifford is the only arguable exception; however, the defendants' explanation is insufficient to show that Mr. Clifford's anticipated testimony is even relevant, let alone important. Similarly, although the defendants provide some justification for the Policy Witnesses, they have failed to demonstrate that the testimony of these witnesses is truly important. Preclusion is therefore the only appropriate remedy; all of the newly identified witnesses are barred.

Conclusion

For the reasons discussed above, the plaintiffs' motion is granted. The defendants are precluded from relying upon the eighty-four witnesses first identified in the May 16, 2008 letter.

SO ORDERED.

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
October 9, 2008

Copies mailed this date:

Christopher T. Dunn, Esq.
Palyn Hung, Esq.
New York Civil Liberties Union
125 Broad Street, 17th Floor
New York, New York 10004

Odile M. Farrell, Esq.
Assistant Corporation Counsel
Special Federal Litigation Division
100 Church Street
New York, NY 10007