UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————— x

MICHAEL SCHILLER, FRANCESCA FIORENTINI,                04 Civ. 7922 (RJS)(JCF)
ROBERT CURLEY, and NEAL CURLEY,

                                        Plaintiffs,

                -against-

The CITY OF NEW YORK; RAYMOND KELLY,
Commissioner of the New York City Police Department;
TERENCE MONAHAN, Assistant Chief of the Bronx Bureau of
the New York City Police Department,

                                        Defendants.

———————————————————————————— x

HACER DINLER; ANN MAURER; ASHLEY WATERS,              04 Civ. 7921 (RJS)(JCF)

                                        Plaintiffs,

                -against-

The CITY OF NEW YORK and RAYMOND W. KELLY,
Commissioner of the New York City Police Department and
INSPECTOR JAMES ESSIG, New York City Police
Department;

                                        Defendants.

———————————————————————————— x

## DEFENDANTS' RULE 72(a) OBJECTIONS TO ORDERS OF MAGISTRATE JUDGE FRANCIS PRECLUDING EIGHTY-FOUR OF DEFENDANTS' WITNESSES

*MICHAEL A. CARDOZO*
Corporation Counsel of the
City of New York
100 Church Street,
New York, New York 10007
(212) 788-0993

*Of Counsel*:
Odile M. Farrell
November 12, 2008

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ............................................................................. 2

BACKGROUND ................................................................................................... 3

               Judge Karas Consolidated All of the RNC Cases
               For Discovery Purposes ............................................................. 3

               Discovery in the Schiller and Dinler Cases ................................. 5

ARGUMENT

               THE   COURT   SHOULD   REVERSE   THE
               MAGISTRATE JUDGE'S ORDERS................................. 8

               A.   Standard of Review....................................................... 8

               B.   Duty to Supplement Disclosures................................... 9

I.

               THE   MAGISTRATE   JUDGE   ERRED   IN
               IGNORING   THE   CONSOLIDATION
               ORDERS AND HOLDING THAT THE
               MASS  UPDATE  LETTERS  DID  NOT
               APPLY TO SCHILLER AND DINLER. ......................... 10

II.

               THE   MAGISTRATE   JUDGE   ERRED   IN
               FINDING THAT THE TIMING OF THE
               DISCLOSURE  OF  THE  EIGHTY-FOUR
               WITNESSES WAS NOT SUBSTANTIALLY
               JUSTIFIED AND HARMLESS ....................................... 11

III.

               THE   MAGISTRATE   JUDGE   ERRED   IN
               FINDING   THE   TESTIMONY   OF   THE
               ARREST   LOCATION   AND   POLICY
               WITNESSES WAS UNIMPORTANT.............................. 14

A.   Arrest  Location  Witness  Ian  Clifford's
Testimony  is  Necessary  to  Refute  Dinler
Plaintiffs' Claim that No Audible Dispersal
Orders or Opportunity to Disperse Was Given ................................. 15

B.   ADA Galperin's Testimony is Necessary to
Rebut  the  Inference  that  Plaintiffs'  Criminal
Charges were Dismissed for Lack of Probable
Cause and Both ADA Galperin and Lieutenant
Spinella  are  Necessary  to  Defend  Against
Plaintiffs' First Amendment Claims ................................. 16

C.   Policy    Witness    Lieutenant    Spinella's
Testimony  is  Necessary  to  Defend  Against
Plaintiffs' First Amendment Claims ................................. 18

D.   Policy Witness Lieutenant Whyte's Testimony
is Necessary to Refute Plaintiff Schiller's First
Amendment    Retaliation    Claim    Against
Members of the Press ........................................................ 19

E.   The  Eighty  Arrest  Location  Witnesses  have
Knowledge  of  The  Group's  Illegal  Conduct
that Formed the Probable Cause for Plaintiffs'
Arrests ................................................................................ 19

IV.

PRECLUSION OF DEFENDANTS' WITNESSES
WAS  PREMATURE,  AND  THEREFORE
ERROR ................................................................................ 20

V.

THE   MAGISTRATES   JUDGE'S   RULING
IMPACTS  THIS  COURT'S  ABILITY  TO
MANAGE  THESE  AND  OTHER  RNC
CASES ................................................................................ 21

CONCLUSION .................................................................................................... 22

## TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                                                                    **<u>Pages</u>**

<u>40 Gardenville v. Travelers Property Casualty</u>,
    2004 U.S. Dist. LEXIS 8846 (W.D.N.Y. April 22, 2004) .......................................................19

<u>American Stock Exhange v. Mopex, Inc.</u>,
    215 F.R.D. 87 (S.D.N.Y. 2002) .............................................................................................8

<u>Curley v. Village of Suffern</u>,
    268 F.3d 65 (2d Cir. 2001).....................................................................................................18

<u>Derthick v. Bassett-Walker Inc.</u>,
    1992 U.S. Dist. LEXIS 14505, 1992 WL 249951, (S.D.N.Y. Sept. 23, 1992)) .......................8

<u>Ebewo v. Martinez</u>,
    309 F. Supp. 2d 600 (S.D.N.Y. 2004)......................................................................................9

<u>Jacob v. Bon Secours</u>,
    2008 U.S. Dist. LEXIS 41606 (S.D.N.Y. May 28, 2008).........................................................9

<u>Jockey International, Inc. v. M/V Leverkusen Express</u>,
    217 F. Supp. 2d 447 (S.D.N.Y. 2002).....................................................................................12

<u>Johnson Electric North America Inc. v. Mabuchi Motor America Corp.</u>,
    77 F. Supp. 2d 446 (S.D.N.Y. 1999).......................................................................................20

<u>Lanzo v. City of New York</u>,
    1999 U.S. Dist. LEXIS 16569, 1999 WL 1007346, (E.D.N.Y. Sept. 21, 1999) .......................8

<u>Nguyen v. IBP, Inc.</u>,
    162 F.R.D. 675 (D. Kan. 1995)..............................................................................................12

<u>Oceans Cuisine, LTD. v. Fishery Products, International</u>,
    2006 U.S. Dist. LEXIS 22133 (E.D.N.Y. April 21, 2006) .......................................................20

<u>Outley v. City of New York</u>,
    837 F.2d 587 (2d. Cir 1988)....................................................................................................9

<u>Pal v. New York University</u>,
    06 Civ. 5892, 2008 U.S. Dist. LEXIS 50902 (S.D.N.Y. June 30, 2008)................................15

<u>Schiller v. The City of New York</u>,
    2007 U.S. Dist. LEXIS 16935 (S.D.N.Y. March 12, 2007) ............................................. 9, 14

**Cases**                                                                    **Pages**

Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.,
    118 F.3d 955 (2d Cir 1997)........................................................................14

Thomas E. Hoar, Inc. v. Sara Lee Corp.,
    900 F.2d 522 (2d Cir. 1990)........................................................................8

Travel Sentry, Inc., v. Tropp,
    2008 U.S. Dist. LEXIS 39697 (E.D.N.Y. May 15, 2008) ........................9

United States v. United States Gypsum Co.,
    333 U.S. 364, 394 (1948)............................................................................8

Zervos v. Verizon N.Y., Inc.,
    252 F.3d 163 (2d Cir. 2001)........................................................................8

**Statutes**

Fed. R. Civ. P. 26 (e) ........................................................................................10

Fed. R. Civ. P. 37(c) ........................................................................................11

## PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 72(a), defendants respectfully submit their objections to Magistrate Judge James C. Francis IV's Memorandum and Order ("Mem. & Order") of October 9, 2008[1] granting plaintiffs' Motion to Preclude eighty-four of defendants' witnesses in these two consolidated RNC cases and Order of October 27, 2008[2] denying defendant's Motion for Reconsideration. The Orders are erroneous and an abuse of Magistrate Judge Francis' discretion for several reasons.

First, it was error for the Magistrate Judge Francis to ignore Judge Kenneth M. Karas's Orders consolidating the Schiller and Dinler cases for discovery with all other RNC cases and to find that Schiller and Dinler are distinct cases for all discovery purposes. There is no basis for this finding. Schiller and Dinler are and remain consolidated with all other RNC cases for discovery purposes. Accordingly, it was error for the Magistrate Judge to preclude defendants from relying upon witnesses discovered, disclosed and in many cases deposed during the consolidated discovery.

Second, Magistrate Judge Francis erroneously held that the testimony of these witnesses is unimportant because none have any particular knowledge of the arrest of any Schiller or Dinler plaintiff. This reasoning is flawed as it erroneously assumes that a witness' testimony is only important if that witness actually saw a particular individual being arrested. But that is not the case. As discussed in detail below, testimony by the arrest location and policy witnesses precluded by Magistrate Judge Francis is necessary:

---

[1] October 9, 2008 Memorandum and Order, attached as Exhibit A to the Odile Farrell Declaration ("O. Farrell Decl.").

[2] October 27, 2008 Order, attached as Exhibit B to the O. Farrell Decl.

- to refute plaintiffs' claims that the NYPD failed to give audible dispersal orders or opportunities to disperse prior to arrest;

- to rebut the inference that plaintiffs' criminal charges were dismissed for lack of probable cause;

- to defend against plaintiffs' First Amendment claims that the arrests were made with malice;

- to refute plaintiffs' First Amendment claim that the police department retaliated against members of the press; and

- to prove that the illegal conduct of the group provided probable cause for plaintiffs' arrests.

Third, Magistrate Judges Francis' ruling was erroneous and premature because only extreme misconduct on the part of the party proffering the evidence or extreme prejudice suffered by the party seeking sanctions justifies the extraordinary sanction of preclusion. Here, there was neither misconduct by defendants nor sufferance of prejudice by plaintiffs. Thus preclusion was not warranted.

Finally, Magistrate Judges Francis' ruling interferes with this Court's ability to manage its docket should it be inclined to consolidate these matters by arrest location for trial. For these reasons, defendants respectfully request that the Court reverse Magistrate Judge Francis' Orders.

## **BACKGROUND**

### **A. Judge Karas Consolidated All of the RNC Cases For Discovery Purposes**

The 2004 Republican National Convention ("RNC") was held from August 27 – September 2, 2004. Approximately 1,818 people were arrested at various locations throughout the City during the week of the RNC. Shortly after the convention ended, plaintiffs in Macnamara, Schiller and Dinler filed lawsuits arising from arrests during the RNC. In the

ensuing months, approximately 40 additional lawsuits were filed; to date, a total of 107 lawsuits have been filed in connection with arrests during the 2004 RNC.

On September 20, 2005, the Honorable Kenneth M. Karas, to whom the RNC cases were then assigned, ordered that the case of Schiller v. The City of New York "is consolidated for discovery purposes with all cases listed in Attachment A to this Order and any other case that is pending or will be filed . . . and which is designated as related to the protest and arrest activity at the 2004 Republican National Convention in New York City." September 20, 2005 Order.[3] Judge Karas designated the Schiller case as "the master file" for all of the consolidated RNC cases. Id.

On October 12, 2005, Judge Karas consolidated Dinler v. City of New York, the companion case at issue here, "with Schiller v. City of New York for discovery purposes as related to the protest activity and arrests during the 2004 Republican National Convention."[4] Although the individual fact discovery cut-off in these two cases was December 15, 2006,[5] pursuant to Judge Karas's rulings, discovery in the RNC cases proceeded on a consolidated basis and, with respect to certain issues, remains open.

Defendants learned the identities of many officers and policy makers with knowledge and information about activity at various arrest locations or arrest processing issues through the process of preparing and producing officers for consolidated depositions. The vast majority of individual plaintiffs and officers were deposed in 2007, pursuant to orders issued by Magistrate Judge Francis. As defendants became aware of the identities of persons with information about the various arrest locations from depositions and other consolidated discovery,

---

[3] Schiller September 20, 2005 Consolidation Order, attached as Exhibit C to the O. Farrell Decl.

[4] Dinler October 12, 2005 Consolidation Order, attached as Exhibit D to the O. Farrell Decl.

[5] November 7, 2006 Order, attached as Exhibit E , to the O. Farrell Decl.

they served all RNC counsel -- including counsel in <u>Schiller</u> and <u>Dinler</u> -- with updated discovery disclosures ("Mass Update Letters").[6]  Defendants also served notices of depositions via e-mail identifying witnesses by name and arrest location.[7]

### B. Discovery in the <u>Schiller</u> and <u>Dinler</u> Cases

Shortly before Judge Karas issued the Consolidation Orders, on March 25, 2005 and April 1, 2005, defendants served their Fed. R. Civ. P. 26(a)(1)(A) initial disclosures ("Initial Disclosures") in the <u>Schiller</u> and <u>Dinler</u> cases, respectively.[8]  On July 15, 2005, defendants served in <u>Dinler</u> a supplement to the Initial Disclosures, which identified one additional witness.[9] At this point a total of 8 witnesses were disclosed.  During 2005 and 2006, defendants identified an additional 33 witnesses in response to plaintiffs' numerous sets of interrogatories.[10]

On September 27, 2006, plaintiffs sent defendants a letter arguing that defendants were required to amend their Initial Disclosures to include any person defendants intended to rely upon for summary judgment or trial who was not previously deposed or listed in Initial Disclosures or interrogatory responses.[11]

On October 20, 2006, defendants advised plaintiffs by letter that the identities of the persons and agencies that defendants may rely on at trial were disclosed by the documents

---

[6] June 4, 2007 letter, attached as Exhibit F to the O. Farrell Decl.  June 29, 2007 letter, attached as Exhibit G to the O. Farrell Decl.  April 4, 2008 letter, attached as Exhibit H to the O. Farrell Decl.  May 16, 2008 letter, attached as Exhibit I to the O. Farrell Decl.

[7] Deposition notices served on plaintiffs, attached as Exhibit J to the O. Farrell Decl.

[8] <u>Schiller</u> Initial Disclosures are, attached as Exhibit K to the O. Farrell Decl.  <u>Dinler</u> Initial Disclosures, attached as Exhibit L to the O. Farrell Decl.

[9] <u>Dinler</u> supplemental disclosures, attached as Exhibit M to the O. Farrell Decl.

[10] The relevant portions of defendants' interrogatory responses, attached as collective Exhibit N to the O. Farrell Decl.

[11] September 27, 2006 letter, attached as Exhibit O to the O. Farrell Decl.

and video recordings produced, and depositions conducted in the consolidated RNC cases. Defendants reserved the right to use any of those persons or agencies at summary judgment or trial.[12]

At the October 24, 2006, status conference, plaintiffs contested defendants' position. In response to an advisory opinion issued by Magistrate Judge Francis,[13] on December 12, 2006, defendants sent plaintiffs in Schiller and Dinler a letter identifying witnesses defendants reasonably intend to rely upon for summary judgment motions or at a trial of Schiller and Dinler.[14]   Of the one hundred and twenty five witnesses and agencies disclosed in defendants' letter, plaintiffs chose only to depose Deputy Commissioner of Intelligence David Cohen.[15] Moreover, plaintiffs subsequently advised Magistrate Judge Francis that they do not consider police officers with knowledge or information about various arrest locations to be significant witnesses in these cases.[16]  Rather, Plaintiffs expressed interest only in witnesses who actually saw their clients being arrested.

Consistent with Judge Karas's Consolidation Orders and defendants' supplemental disclosure obligations, defendants continued to include counsel for plaintiffs in Schiller and Dinler on e-mail distributions of Mass Update Letters and notices of defense witness depositions -- both of which identified defense witnesses by name and the arrest locations about which those witnesses had knowledge and information.

---

[12] October 20, 2006 letter, attached as Exhibit P to the O. Farrell Decl.

[13] October 24, 2006 status conference transcript, p.117, attached as Exhibit Q to the O. Farrell Decl.

[14] December 12, 2006 letter, attached as Exhibit R to the O. Farrell Decl.

[15] Seventeen of the witnesses and agencies disclosed in defendants December 12, 2006 letter had previously been deposed.

[16] January 12, 2007 status conference transcript, p.5, attached as Exhibit S to the O. Farrell Decl.

At the February 15, 2008 and March 26, 2008 status conferences plaintiffs raised for the first time the issue of whether defendants' Mass Update Letters pertained to the Schiller and Dinler cases.  After defendants stated that the updates were in fact applicable to all RNC cases, Magistrate Judge Francis suggested that defendants reissue the previous Mass Update Letters specifically referencing the Schiller and Dinler case captions.[17]

On May 16, 2008, defendants provided plaintiffs with such a letter.[18]  The bulk of the individuals listed were police officer witnesses at the two arrest locations in issue ("Arrest Location Witnesses").  Three of the individuals have information related to NYPD policies and practices ("Policy Witnesses").  One witness, Assistant District Attorney Gary Galperin ("ADA Galperin"), who is the Deputy Chief of the Trial Division in charge of Manhattan Criminal Court, was the Fed. R. Civ. P. 30(b)(6) witness chosen by the Manhattan District Attorney's Office in October 2007 in response to a subpoena and deposition notice served by Macnamara plaintiffs' counsel.[19]  Pursuant to Discovery Order #2, Macnamara plaintiffs' counsel had a duty serve all counsel with notice of this deposition.[20]  Plaintiffs' counsel in Schiller and Dinler did not attend ADA Galperin's deposition.

Despite the Magistrate Judge's prior instances in the consolidated RNC cases of denying motions to preclude or deferring such decisions to the trial judge,[21] the Court entered a

---

[17] February 15, 2008 status conference transcript, p.10-14, attached as Exhibit T to the O. Farrell Decl.  March 26, 2008 status conference transcript, p.9-11, 13, attached as Exhibit U to the O. Farrell Decl.

[18] May 16, 2008 letter, attached as Exhibit V to the O. Farrell Decl.

[19] Subpoena and 30(b)(6) notice, attached as Exhibit W to the O. Farrell Decl.

[20] November 13, 2006 Discovery Order #2, at ¶ 4, attached as Ex. X to the O. Farrell Decl.

[21] See Macnamara Orders of September 7, 2007 (denying motion to preclude), November 28, 2007 and April 22, 2008 (deferring decision regarding preclusion to the trial judge); Schiller Order of March 12, 2007 (denying motion to preclude); and Eastwood Order of January 23, 2008 (denying motion to preclude as premature), attached as collective Exhibit Y to the O. Farrell Decl.

Memorandum and Order precluding defendants from relying upon the eighty-four witnesses identified in the May 16, 2008 letter.[22]

On October 24, 2008, defendants filed a Memorandum of Law and Motion for Reconsideration pursuant to Local Rule 6.3, which was denied by the Magistrate Judge.[23]   These cases have not been set for trial and there is no current deadline for summary judgment motions.

## ARGUMENT

## THE COURT SHOULD REVERSE THE MAGISTRATE JUDGE'S ORDERS

### A. Standard of Review

Sanctions pursuant to Fed. R. Civ. P. 37 for noncompliance with discovery orders are typically within the discretion of the magistrate judge, reviewable by the district court under the "clearly erroneous or contrary to law" standard.  See Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990).  A finding is "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." American Stock Exhange v. Mopex, Inc., 215 F.R.D. 87, 90 (S.D.N.Y. 2002), (citing Derthick v. Bassett-Walker Inc., 1992 U.S. Dist. LEXIS 14505, 1992 WL 249951, at *8 (S.D.N.Y. Sept. 23, 1992)) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 394 (1948)).  Pursuant to this standard of review, reversal of a magistrate's order is appropriate upon a finding that discretion was abused. Id. (citing Lanzo v. City of New York, 1999 U.S. Dist. LEXIS 16569, 1999 WL 1007346, at *2 (E.D.N.Y. Sept. 21, 1999)).

---

[22] Opposition to Plaintiffs' Motion to Preclude, attached as Ex. Z to the O. Farrell Decl.

[23]  Motion and Memorandum of Law are attached as collective Exhibit AA to the O. Farrell Decl.

A magistrate judge "abuses" or "exceeds" the discretion accorded to the court when the challenged decision (1) rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions. Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 169 (2d Cir. 2001) (overruled on other grounds).

Courts in this Circuit have consistently held that preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy that is highly disfavored and should be granted with caution. Ebewo v. Martinez, 309 F.Supp.2d 600, 607 (S.D.N.Y. 2004). Before granting the extreme sanction of preclusion, a judge should inquire fully into the actual difficulties which the violation causes, and consider less drastic options. Outley v. City of New York, 837 F.2d 587, 591 (2d. Cir 1988) (holding that trial court abused discretion in precluding two eyewitnesses from testifying); See also Travel Sentry, Inc., v. Tropp, 2008 U.S. Dist. LEXIS 39697 (E.D.N.Y. May 15, 2008) (holding preclusion too extreme of a sanction were documents intentionally withheld); Jacob v. Bon Secours, 2008 U.S. Dist. LEXIS 41606 (S.D.N.Y. May 28, 2008) (declining to preclude expert where report produced late without good explanation); Schiller v. The City of New York, 2007 U.S. Dist. LEXIS 16935 at * 13 (S.D.N.Y. March 12, 2007), ("where the evidence at issue is critical, only extreme misconduct on the part of the party proffering the evidence or extreme prejudice suffered by the party seeking sanctions would justify the extraordinary sanction of preclusion.") (internal citations and quotations omitted).

**B. Duty to Supplement Disclosures**

Federal Rule of Civil Procedure 26(e), which governs the supplementation of disclosures and discovery responses, provides:

**(1) In General.**  A party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission - must supplement or correct its disclosure or response:

**(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information had not otherwise been made known to the other parties during the discovery process or in writing; . . .

Fed. R. Civ. P. 26 (e).

## I.

## THE MAGISTRATE JUDGE ERRED IN IGNORING THE CONSOLIDATION ORDERS AND HOLDING THAT THE MASS UPDATE LETTERS DID NOT APPLY TO <u>SCHILLER</u> AND <u>DINLER.</u>

By holding that 1) <u>Schiller</u> and <u>Dinler</u> remained distinct cases for substantially all discovery purposes and 2) plaintiffs had no reason to assume that the Mass Update Letters pertained to them,[24] Magistrate Judge Francis disregarded Judge Karas's consolidation orders.  In those orders, Judge Karas explicitly held that the <u>Schiller</u> and <u>Dinler</u> cases are "consolidated for discovery purposes" with all of the RNC cases.  In fact, when he consolidated the RNC cases for discovery purposes, Judge Karas specifically held that the <u>Schiller</u> "case will be the master file." His orders could not be more clear. Yet, despite Judge Karas's orders, Magistrate Judge Francis erroneously held that the individual case discovery cut-off shields Schiller and Dinler from consolidated discovery.  Magistrate Judge Francis cites no authority which allows a magistrate judge to ignore the District Court's consolidation orders.   Disregarding Judge Karas's consolidation orders was an abuse of discretion and warrants reversal.

---

[24] Mem. & Order at p. 9-10, attached as Exhibit A to the O. Farrell Decl.

Second, Magistrate Judge Francis committed error when he reasoned that <u>Schiller</u> and <u>Dinler</u> plaintiffs had no reason to assume the Mass Update Letters applied to them solely because the letters did not contain case specific captions. The Mass Update Letters were organized by date of arrest and arrest location and served upon all RNC counsel. No plaintiffs' counsel in these hotly contested cases ever expressed doubt or confusion over the format in which witnesses were disclosed in the Mass Update Letters. All plaintiffs counsel know their clients' date of arrest and arrest location and were put on notice that the witnesses listed in the Mass Update Letters had information pertaining to their specific case. Indeed, although they received the Mass Update Letters, counsel in <u>Schiller</u> and <u>Dinler</u> never objected to or questioned the applicability of those letters to their cases prior to the court status conference on February 15, 2008. The Magistrate Judge's finding that the Mass Update Letters had to have a case caption in order to be applicable to <u>Schiller</u> and <u>Dinler</u> is contrary to the accepted practice in these consolidated RNC cases and is error.

## II.

### THE MAGISTRATE JUDGE ERRED IN FINDING THAT THE TIMING OF THE DISCLOSURE OF THE EIGHTY-FOUR WITNESSES WAS NOT SUBSTANTIALLY JUSTIFIED AND HARMLESS

Federal Rule of Civil Procedure 37(c)(1), governing the failure to disclose or supplement provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. . . .

Fed. R. Civ. P. 37(c) (1).

"Substantial justification means 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether they [sic] party was required to comply with the disclosure request.'" Jockey Int'l, Inc. v. M/V Leverkusen Express, 217 F. Supp. 2d 447, 452 (S.D.N.Y. 2002) (quoting Nguyen v. IBP, Inc., 162 F.R.D. 675, 680 (D. Kan. 1995)).

Magistrate Judge Francis held that defendants failed to justify why any of the eighty-four witnesses were not directly disclosed to the Schiller and Dinler plaintiffs in a reasonably timely manner.[25] That finding, however, is contradicted by the record for several reasons. First, the witnesses were disclosed in a timely manner consistent with Judge Karas's Consolidation Order. The eighty-four witnesses were disclosed on a rolling basis as defendants learned of their identities during consolidated discovery in the RNC cases. Witnesses were not disclosed in 2006 because defendants did not learn of their identities until 2007 and 2008, when arrest records were unsealed and individual plaintiffs and officers were deposed in the consolidated RNC cases. Second, defendants respectfully submit that, in holding that defendants failed to justify the timing of their disclosures, Magistrate Judge Francis erred in disregarding the following:

- The 2004 Republican National Convention was one of the largest policing operations in the history of New York City that involved thousands of police officers assigned from all five boroughs and all types of commands, responding to mass acts of civil disobedience at pop-up locations throughout the City. There was no single document or roster identifying the officers who responded to these arrest locations and no document that captured the identity of all police officers present at a particular location. Rather, the identification of police personnel required a combination of reviewing thousands of arrest records (many of which were sealed and not accessible to defendants until 2007) and from the testimony of other officers who identified additional personnel.

- The Order unsealing the arrest records of the 1,200 non-parties arrested during the RNC was entered on November 13, 2006 – just one month

---

[25] Mem. & Order at p. 12, Exhibit A to the O. Farrell Decl.

before the artificial discovery cut-off date in <u>Schiller</u> and <u>Dinler</u>. From these documents, which were produced on a rolling basis throughout 2007, defendants obtained, for the first time, the names of additional officers who were present at the various arrest locations. After obtaining the previously sealed information, defendants made substantial disclosures of witnesses in two separate letters in June 2007.[26]

- On June 15, 2007 and July 5, 2007, Magistrate Judge Francis ordered the depositions of all plaintiffs and defendants to be completed by November 16, 2007.[27] To date, approximately 480 plaintiffs and 324 defendants have been deposed in the consolidated RNC cases. After completion of the court ordered discovery and reviewing hundreds of deposition transcripts which revealed the names of additional witnesses with knowledge and information, defendants sent out two additional Mass Update Letters, one in April 2008 and one in May 2008.[28]

- When <u>Schiller</u> and <u>Dinler</u>'s counsel raised for the first time at the February 2008 court conference their confusion over whether the Mass Update Letters applied to their cases, defendants advised counsel that the Mass Update Letters applied to all RNC cases, including <u>Schiller</u> and <u>Dinler</u>, consistent with Judge Karas's Orders consolidating discovery in all RNC cases. Thus it was and has always been defendants' position that the Mass Update Letters applied in these two cases. [29]

- When <u>Schiller</u> and <u>Dinler</u>'s counsel raised this issue again at a subsequent court conference defendants, pursuant to the Court's instruction, sent <u>Schiller</u> and <u>Dinler</u> plaintiffs' counsel a case specific letter (the May 16, 2008 letter) re-listing the witnesses previously disclosed in the Mass Update Letters sent to all RNC Counsel in June 2007, and in April and May of 2008.[30]

Finally, Magistrate Judge Francis erred in finding prejudice or harm to plaintiffs because plaintiffs would have to spend time and money deposing eighty-four new witnesses.[31] In so finding, Magistrate Judge Francis ignored the fact that many of the Arrest Location

---

[26] November 13, 2006 Order at p. 12-14,.attached as Exhibit BB to the O. Farrell Decl.

[27] June 15, 2007 and July 5, 2007 Orders, attached as collective Exhibit CC to the O. Farrell Decl.

[28] Exhibits H and I to the O. Farrell Decl.

[29] Exhibit T to the O. Farrell Decl.

[30] Exhibit U to the O. Farrell Decl.

[31] Mem. & Order at p. 16-17, Exhibit A to the O. Farrell Decl.

Witnesses have been deposed in the consolidated discovery and that plaintiffs' counsel received notice of these depositions and chose not to attend.   Moreover, Schiller and Dinler's counsel made previous representations that they were not interested in deposing any Arrest Location Witnesses who did not recall seeing their individual clients at or immediately before their arrests, which encompasses all of the Arrest Location Witnesses at issue.[32]   Furthermore, plaintiffs may depose the three Policy Witnesses without delaying summary judgment motions or trial because consolidated discovery in the RNC cases is ongoing.   Non-party witnesses are still being deposed, expert discovery has not commenced, discovery arising from the intelligence issues remains unresolved, and dates for despositive motions and trial have not been set.

In light of the complexities of this litigation, Magistrate Judge Francis abused his discretion in holding that the timing of defendants' updated disclosures through Mass Update Letters was not substantially justified.   Furthermore, defendants actions do not amount to the extreme misconduct necessary to justify the drastic sanction of preclusion.   See Schiller v. The City of New York, 2007 U.S. Dist. LEXIS 16935 at * 13 (S.D.N.Y. March 12, 2007), ("where the evidence at issue is critical, only extreme misconduct on the part of the party proffering the evidence or extreme prejudice suffered by the party seeking sanctions would justify the extraordinary sanction of preclusion.") (internal citations and quotations omitted).

### III.

### THE MAGISTRATE JUDGE ERRED IN FINDING THE TESTIMONY OF THE ARREST LOCATION AND POLICY WITNESSES WAS UNIMPORTANT

Magistrate Judge Francis was correct in considering the four factors outlined in Softel, Inc. v. Dragon Medical & Scientific Communications, Inc., 118 F.3d 955, 961 (2d Cir

---

[32] See  p5 of Exhibit - to the O. Farrell Decl.

1997), in determining whether sanctions were appropriate.   In exercising discretion in imposing sanctions, courts consider: "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."   Softel, at 961.   However, Magistrate Judge Francis' reliance upon the Pal v. New York University, 06 Civ. 5892, 2008 U.S. Dist LEXIS 50902 (S.D.N.Y. June 30, 2008),[33] decision as justification for the imposition of sanctions is error because Pal did not involve cases consolidated for discovery.   For the reasons outlined below, Magistrate Judge Francis erred in finding that the testimony of the Arrest Location and Policy Witnesses is not important evidence that is critical to the defense of the these cases.

### A.   Arrest Location Witness Ian Clifford's Testimony is Necessary to Refute Dinler Plaintiffs' Claim That No Audible Dispersal Orders or Opportunity to Disperse Was Given

Magistrate Judge Francis erred in precluding non-party Arrest Location Witness Ian Clifford.   Defendants first learned of Mr. Clifford's knowledge regarding dispersal orders given at East 16th Street on August 31, 2004, during his November 15, 2007 deposition in the RNC case of Karlin v. Murtagh, No. 05 Civ. 7789.   That case arose from arrests made on August 26, 2004, and defendants learned for the first time at Mr. Clifford's deposition that he was also present on East 16th Street on August 31, 2004, when the Dinler plaintiffs were arrested.

In precluding defendants from relying on Ian Clifford's testimony at summary judgment or trial, Magistrate Judge Francis held that "Defendants' explanation is insufficient to show that Mr. Clifford's anticipated testimony is even relevant, let alone important."[34]   His

---

[33] Mem. & Order at p. 9, Exhibit A to the O. Farrell Decl.

[34] Mem. & Order at p. 18), Exhibit A to the O. Farrell Decl.

holding is clearly erroneous because it disregards the fact that the <u>Dinler</u> Plaintiffs' claim that on August 31, 2004, police systematically arrested people on East 16th Street, without giving audible dispersal orders or an opportunity for people to disperse before executing arrests.[35]  Ian Clifford testified that on August 31, 2004, he was present at that location, that police officers told him to disperse from the area and that he and others left the area without being arrested.[36]  Mr. Clifford's testimony is important to refute the <u>Dinler</u> Plaintiffs' claims that no audible dispersal orders or an opportunity to disperse was given.  To date, Mr. Clifford is the only non-party/non-police department employee who testified that police gave both dispersal orders and sufficient time to disperse at the <u>Dinler</u> arrest location.

Due to the extreme importance and relevance of Mr. Clifford's testimony, the fact that defendants did not engage in misconduct of any kind in disclosing his identity in the consolidated RNC cases and that the <u>Dinler</u> plaintiffs' failed to demonstrate any prejudice, let alone the severe prejudice necessary to justify the highly disfavored sanction of preclusion, Magistrate Judge Francis abused his discretion by excluding Mr. Clifford's testimony.

### B. ADA Galperin's Testimony is Necessary to Rebut the Inference That Plaintiffs' Criminal Charges were Dismissed for Lack of Probable Cause and Both ADA Galperin and Lieutenant Spinella are Necessary to Defend Against Plaintiffs' First Amendment Claims

Magistrate Judge Francis held that Policy Witness ADA Galperin's testimony regarding the disposition of plaintiffs' criminal cases is inapplicable to the <u>Schiller</u> and <u>Dinler</u> cases because plaintiffs are not asserting claims for wrongful prosecution.[37]  While it is true plaintiffs are not asserting claims for malicious prosecution, the <u>Schiller</u> plaintiffs are relying

---

[35] <u>Dinler</u> Third Amended Complaint ¶¶ 3, 20, 25b, 43, 57, attached as Exhibit DD to the O. Farrell Decl.

[36] Ian Clifford's November 15, 2007 deposition, p. 112-114, attached as Exhibit EE to the O. Farrell Decl.

[37] Mem. & Order at p. 14, attached as Exhibit A to the O. Farrell Decl.

upon the fact that the Manhattan District Attorney's Office dismissed all 227 prosecutions arising out of the August 31, 2004 arrests on Fulton Street as evidence that their arrests were unlawful.[38]  However, those claims are contradicted by statements that ADA Galperin made on the date the prosecutions were dismissed.   At the dismissal of Plaintiff Michael Schiller's criminal proceedings, ADA Galperin made a statement on the record of the reasons for the dismissal and those reasons did not include a lack of probable cause for the arrests.[39]  His testimony is thus critical to defending against claims in the Schiller case and other RNC cases arising from arrests at that location.

      At a minimum, ADA Galperin's testimony is necessary to rebut to plaintiffs' contentions about why their criminal charges were dismissed.   Furthermore, the Schiller plaintiffs will not be prejudiced by his testimony because it does not introduce new facts or subjects about which plaintiffs were denied discovery.  Defendants, however, would be severely prejudiced without ADA Galperin's testimony, as defendants would be effectively precluded from rebutting plaintiffs' claim that the District Attorney dismissed plaintiffs' criminal charges because there was not probable cause for plaintiffs' arrests.

      Moreover, and equally important, Magistrate Judge Francis held that "Galperin's legal opinion concerning probable cause for the arrests made in Schiller and Dinler is inadmissible."[40]  Even if that is the case, however, ADA Galperin's testimony regarding what constitutes sufficient probable cause in a mass arrest situation -- that it is proper to arrest a group of individuals for illegal acts provided one can establish a chain of custody between the individual and the group -- is certainly relevant to defending Schiller and Dinler's First

---

[38] Schiller Second Amended Complaint ¶¶ 10, 34, attached as Exhibit FF to the O. Farrell Decl...

[39] Schiller October 13, 2004 criminal court transcript, attached as Exhibit GG to the O. Farrell Decl.

[40] Mem. & Order at p. 15, attached as Exhibit A to the O. Farrell Decl.

Amendment claims. More specifically, because plaintiffs' First Amendment claims require an element of malice or improper motive, the fact that the Deputy Chief of the Trial Division in charge of Manhattan Criminal Court believes an arrest under such circumstances is proper (even if found to be improper as a matter of law under the Fourth Amendment) would be admissible in assessing whether the police believed such an arrest was proper and whether the arrest was made with malice under the First Amendment. See Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (in analyzing First Amendment claims, the court recognized that "specific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim"). Accordingly, ADA Galperin's testimony is important and relevant to these cases and Magistrate Judge Francis's exclusion is clearly erroneous and an abuse of discretion.

### C. Policy Witness Lieutenant Spinella's Testimony is Necessary to Defend Against Plaintiffs' First Amendment Claims

For these same reasons, Policy Witness Lieutenant Raymond Spinella's testimony is important because it will show that police officers were trained on the proper execution of group arrests and prove that such arrests were neither illegal nor done with malice. Moreover, Lieutenant Spinella was named as a replacement for deceased witness James Fyfe, who was listed in defendants' February 2006 Supplemental Interrogatory Responses as the person with knowledge of defendants' training practices (and, as such, was timely disclosed).[41] Counsel for Schiller and Dinler never sought to depose Commissioner Fyfe. The Magistrate Judge abused his discretion in precluding Lieutenant Spinella.

---

[41] See Schiller supplemental response to Interrog. 16, Exhibit N to the O. Farrell Decl.

**D.  Policy Witness Lieutenant Whyte's Testimony is Necessary to Refute Plaintiff Schiller's First Amendment Retaliation Claim Against Members of the Press**

Plaintiff Michael Schiller claims that at the time of his arrest he was filming a political documentary, that he pleaded with police to release him because he was a working member of the press, and that he was arrested in violation of his rights under the First Amendment of the United States Constitution.[42]  Because Schiller admits he did not have a press pass at the time of his arrest, Lieutenant Whyte's testimony is critical in defending against Mr. Schiller's First Amendment retaliation claim to show that the police had no malice in arresting Mr. Schiller because the police department has policies and procedures regarding issuance of NYPD press passes which rebut plaintiffs' claims that the individual officers acted with malice. Accordingly, Lieutenant Whyte's testimony is important to the defense of the Schiller case and Magistrate Judge Francis abused his discretion in precluding Lieutenant Whyte.

**E.  The Eighty Arrest Location Witnesses Have Knowledge of the Group's Illegal Conduct that Formed the Probable Cause for Plaintiffs' Arrests**

Regarding the eighty remaining Arrest Location Witnesses, Magistrate Judge Francis overlooked the fact that Schiller and Dinler plaintiffs were arrested as a result of the illegal conduct of a group of which they were a part.  Testimony from these Arrest Location Witnesses regarding the behavior of very large groups at the two arrest locations at issue is relevant to defendants' affirmative defense that there was probable cause for the arrests of the Schiller and Dinler plaintiffs, as well as for the arrests of all other plaintiffs at those two locations. As set out fully in Point V, infra, because these witnesses are also relevant to the other RNC cases (arresting officers of other RNC plaintiffs, etc.),[43] their preclusion would interfere

---

[42] Schiller Second Amended Complaint ¶¶ 7, 37-40, 122, 125, Ex FF to the O. Farrell Decl..

[43] 30 of the Arrest Location Witnesses at issue were the arresting officers of other RNC plaintiffs at the Schiller and Dinler arrest locations.  Those officers are:  PO Josh Lewis, PO Juan Picardo, PO Kenneth Larson, PO Michael

with this Court's ability to manage these RNC cases on motions and trials. For these reasons, the Magistrate Judge abused his discretion in precluding the eighty police department Arrest Location Witnesses.

IV.

### PRECLUSION OF DEFENDANTS' WITNESSES WAS PREMATURE, AND THEREFORE ERROR

Preclusion of eighty-four witnesses in a wholesale manner was an abuse of discretion. In the past Magistrate Judge Francis, in these and other RNC cases, has either denied motions to preclude or found them to be premature.[44] See also 40 Gardenville v. Travelers Property Casualty, 2004 U.S. Dist. LEXIS 8846 at *8 (W.D.N.Y. April 22, 2004) (magistrate judge in denying motion to preclude evidence held that "Preclusion of evidence is ultimately for the District Judge to determine") See also Oceans Cuisine, LTD. v. Fishery Products, Int'l., 2006 U.S. Dist. LEXIS 22133 at *21 (E.D.N.Y. April 21, 2006) (overturning preclusion order of Magistrate Judge after finding that Magistrate's order prevented party from any further supplementation of discovery responses after discovery cut-off). In cases in which courts have addressed motions to preclude evidence, they generally have done so *after* a party has attempted to offer that evidence, at which point the court is able to evaluate the degree of prejudice to the moving party as well as the reasons for the timing of the production. See, e.g., Johnson Electric North America Inc. v. Mabuchi Motor America Corp., 77 F.Supp.2d 446, 459 (S.D.N.Y. 1999)

---

Stolzer, PO Monique Dultano-Cuban (now Perez), PO Jason Stewart, PO Alexander Londino, PO Albert Ng, Det. Michael Ali, PO Cuong Nguyen, PO Daniel Ryan, PO Derrick Baity, PO Elvis Suero, PO Pavel Gomez, PO Gregory Bell, PO Gregory Fontaine, PO Gregory Markowski, PO James Rufle, PO Jonathan Quimby, PO Joseph Panico, PO Kevin Sam, PO Luis Sandoval, PO Michael Gonzalez, PO Nicholas Gravino, PO Michael Bonacci, PO Khamwatte Brijbukhan, PO Joseph Bucchignano, PO Hui Chi, PO Noel Rodriguez. The other RNC cases in which the now precluded officers are witnesses are: Abdell, Adams, Bastidas, Crotty, Grosso, Macnamara, Stark and Rigby.

[44] See supra footnote 23.

(denying motion to preclude testimony from trial).  Magistrate Judge Francis clearly abused his discretion by preemptively precluding eighty-four of defendants' witnesses.

V.

**THE MAGISTRATES JUDGE'S RULING
IMPACTS THIS COURT'S ABILITY TO
MANAGE THESE AND OTHER RNC CASES**

Although not error *per se*, Magistrate Judge Francis' ruling impacts this Court's ability to manage these and other RNC cases.  For example, Schiller and Dinler arise from the two largest arrest locations at issue in the RNC litigation, [45] and as a matter of judicial economy, Your Honor may decide to consolidate trials of cases stemming from these two arrest locations, including the trials of Schiller and Dinler.  The preclusion of eighty-four witnesses from the Schiller and Dinler cases, who are still viable witnesses in the other pending RNC cases,[46] would substantially impede, if not prevent, the this Court's ability to conduct consolidated trials, if it so desires, thereby requiring this Court to incur the additional cost and inefficiency of hearing the Schiller and Dinler cases separately.  Similarly, because Schiller and Dinler involve policy claims asserted in most, if not all of the other RNC cases, this Court may want to consolidate motion practice or trials on those issues and the preclusion of the Policy Witnesses would impede or make that impossible.  Accordingly, it was an abuse of discretion for Magistrate Judge Francis to remove this Court's ability to manage the RNC cases on motions and trial.

---

[45] On August 31, 2004, 227 people were arrested on Fulton Street between Church Street and Broadway, including Schiller Plaintiffs.  On August 31, 2004, over 300 people were arrested on East 16th Street between Union Square East and Irving Place, including Dinler Plaintiffs.

[46] There are currently 6 lawsuits pending from arrests made on August 31, 2004 on Fulton Street (Abdell, Botbol, Macnamara, Meehan, Pagoda, and Schiller), and 15 lawsuits pending from arrest made on August 31, 2004 on East 16th Street (Adams, Bastidas, Bell, Concepcion, Crotty, Dinler, Dudek, Grosso, Kennedy, Macnamara, Moran, Rigby, Starin, Stark, and Tikkun).

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court reverse the Magistrate Judge Francis' Orders of October 9, 2008 and October 24, 2008 on the grounds that the imposition of the drastic remedy of preclusion in these cases was error and an abuse of discretion and grant any further relief the Court deems just.

Dated:       November 12, 2008
              New York, New York

                        Respectfully submitted,
                        Michael A. Cordozo
                        Corporation Counsel of the City of New York
                        Attorney for Defendants
                        100 Church Street, Room 3-154
                        New York, New York  10007
                        (212) 442-8678

                By:     _Odile M. Farrell_
                        Odile M. Farrell
                        Assistant Corporation Counsel
                        Special Federal Litigation Division